[849 NE2d 926, 816 NYS2d 703]

John S. Zumpano, Appellant, v James F. Quinn, Individually and as Assistant Pastor at St. Agnes Catholic School, et al., Respondents.

Estate of Brendan Boyle, Deceased, et al., Appellants, v James Smith et al., Defendants, and Otto Garcia et al., Respondents.

Argued January 3, 2006; decided February 21, 2006

## POINTS OF COUNSEL

*Frank Policelli,* Utica, for appellant in the first above-entitled action. I. Defendants are equitably estopped from asserting the statute of limitations since defendants created John S. Zumpano's mental condition through their wrongful conduct, thus preventing him from pursuing, protecting or safeguarding his legal rights due to an overall inability to function in society. (*McCarthy v Volkswagen of Am.,* 55 NY2d 543; *Graboi v Kibel,* 432 F Supp 572.) II. The issue of whether defendants should be barred from asserting the statute of limitations under principles of equity could not be decided without a hearing or trial under CPLR 2218. (*General Stencils v Chiappa,* 18 NY2d 125; *Anonymous v Anonymous,* 154 Misc 2d 46; *Century Fed. Sav. & Loan Assn. of Long Is. v Net Realty Holding Trust,* 87 AD2d 858.) III. Because the conduct of defendant James F. Quinn and defendant Catholic Diocese of Syracuse, New York caused the mental condition that has rendered appellant John S. Zumpano incapable of bringing his lawsuit prior to this time, principles of equity mandate that defendants should not now be allowed to benefit from their wrongdoing. (*von Bulow by Auersperg v von Bulow,* 634 F Supp 1284; *General Stencils v Chiappa,* 18 NY2d 125; *Glus v Brooklyn Eastern Dist. Terminal,* 359 US 231.) IV. The doctrine of equitable estoppel is not limited to separate and subsequent acts of fraud and concealment under *General Stencils v Chiappa* (18 NY2d 125 [1966]), but rather includes any wrongdoing by defendant that produces the long delay between the accrual of the cause of action and the institution of the legal proceeding. (*Simcuski v Saeli,* 44 NY2d 442; *Steo v Cucuzza,* 213 AD2d 624; *Doe v Holy See [State of Vatican City],* 6 AD3d 1228; *Glus v Brooklyn Eastern Dist. Terminal,* 359 US 231; *von Bulow by Auersperg v von Bulow,* 634 F Supp 1284; *Anonymous v Anonymous,* 154 Misc 2d 46; *Coopersmith v Gold,* 172 AD2d 982.) V. Plaintiff has the right to a jury trial on the issues to be decided at the hearing pursuant to CPLR 2218. (*Abraham v Kosinski,* 305 AD2d 1091; *Arbutina v Bahuleyan,* 75 AD2d 84; *Muhl v Vesta Fire Ins. Corp.,* 288 AD2d 108; *Cerrato v Thurcon Constr. Corp.,* 92 AD2d 89; *Grant v Guidotti,* 67 AD2d 736; *Marable v Robinson,* 102 Misc 2d 96, 114 Misc 2d 437; *Harrison v Malcolm,* 186 AD2d 502.)

*Hancock & Estabrook, LLP,* Syracuse (*Mark J. Schulte* and *Paul M. Hanrahan* of counsel), for respondents in the first

above-entitled action. I. The lower courts correctly granted the diocesan defendants' dismissal motion because all causes of action pleaded had been time-barred for more than two decades. (*Langford v Roman Catholic Diocese of Brooklyn,* 271 AD2d 494; *Sharon B. v Reverend S.,* 244 AD2d 878; *Doe v Holy See [State of Vatican City],* 17 AD3d 793; *State of New York v Cortelle Corp.,* 38 NY2d 83; *Tserotas v Greek Orthodox Archdiocese of N. & S. Am.,* 251 AD2d 323; *Mars v Diocese of Rochester,* 6 AD3d 1120, 3 NY3d 608; *Bassile v Covenant House,* 152 Misc 2d 88, 191 AD2d 188, 82 NY2d 656; *Doe v Roe,* 192 AD2d 1089; *Coopersmith v Gold,* 172 AD2d 982; *Schmidt v Bishop,* 779 F Supp 321.) II. Plaintiff was foreclosed by statute from claiming a 33-year limitations toll on grounds of insanity. (*McCarthy v Volkswagen of Am.,* 55 NY2d 543; *Brown v Rochester Gen. Hosp.,* 292 AD2d 855; *Sanchez v Wolkoff,* 247 AD2d 529; *Steo v Cucuzza,* 213 AD2d 624; *Schmertz v Friedlander,* 36 AD2d 606; *Smith v Smith,* 830 F2d 11.) III. Plaintiff also failed to plead a factual basis for tolling the applicable statutes of limitations on equitable estoppel grounds. (*Smith v Smith,* 830 F2d 11; *Airco Alloys Div. v Niagara Mohawk Power Corp.,* 76 AD2d 68; *Simcuski v Saeli,* 44 NY2d 442; *Doe v Holy See [State of Vatican City],* 17 AD3d 793; *Zoe G. v Frederick F.G.,* 208 AD2d 675; *Doe v Roe,* 192 AD2d 1089; *Hoffman v Hoffman,* 162 AD2d 249; *Davis v Smith Corp.,* 262 AD2d 752; *Doe v Holy See [State of Vatican City],* 6 AD3d 1228; *Jordan v Ford Motor Co.,* 73 AD2d 422.) IV. There is no existing legal authority to support plaintiff's present attempt to combine the legal maxim "no man may benefit from his own wrong" with a barred insanity claim to create an entirely new tolling doctrine. (*General Stencils v Chiappa,* 18 NY2d 125; *Simcuski v Saeli,* 44 NY2d 442; *Matter of Steyer,* 70 NY2d 990; *Jordan v Ford Motor Co.,* 73 AD2d 422; *Coopersmith v Gold,* 172 AD2d 982; *von Bulow by Auersperg v von Bulow,* 634 F Supp 1284; *Anonymous v Anonymous,* 154 Misc 2d 46.) V. This Court's adoption of the expansive new tolling doctrine plaintiff advocates would operate in contravention of statute and erode other existing tolling doctrines. (*McCarthy v Volkswagen of Am.,* 55 NY2d 543; *Flanagan v Mount Eden Gen. Hosp.,* 24 NY2d 427; *Goldsmith v Howmedica, Inc.,* 67 NY2d 120; *Matter of Steinhardt v Johns-Manville Corp.,* 54 NY2d 1008; *Bassile v Covenant House,* 152 Misc 2d 88, 191 AD2d 188, 82 NY2d 656.)

*Michael G. Dowd,* New York City, and *Edward M. Shaw* for appellants in the second above-entitled action. I. Plaintiffs have far more than adequately alleged a longtime corrupt campaign

by the Roman Catholic Diocese of Brooklyn and bishops to create a specious statute of limitations defense by misrepresentations of fact and other active deceit, concealing their own knowing facilitation of the priests' abuse. On the detailed allegations of this complaint, the pleading of an estoppel did not require any allegation of diligent investigation. (*McIvor v Di Benedetto,* 121 AD2d 519; *Davis v Smith Corp.,* 262 AD2d 752; *Thoma v Town of Schodack,* 6 AD3d 957; *Campaign for Fiscal Equity v State of New York,* 86 NY2d 307; *Skarren v Household Fin. Corp.,* 296 AD2d 488.) II. The allegations of a fiduciary relationship between the Roman Catholic Diocese of Brooklyn and bishops and the child plaintiffs, and of a continuing breach of said duty thereafter by the diocese's and bishops' continuous concealment of their own wrongdoing in order to evade responsibility, constituted an independent basis for the legal sufficiency of the alleged estoppel. Just as in the case of the estoppel theory addressed in point I, pleading an estoppel in the context of a breached fiduciary duty did not require any allegation of diligent investigation. (*Penato v George,* 52 AD2d 939; *Martinelli v Bridgeport R.C. Diocesan Corp.,* 196 F3d 409; *Mars v Diocese of Rochester,* 6 AD3d 1120, 3 NY3d 608; *Doe v Holy See [State of Vatican City],* 17 AD3d 793; *Zumpano v Quinn,* 12 AD3d 1096.)

*Conway, Farrell, Curtin & Kelly, P.C.,* New York City (*Joseph H. Farrell, Jonathan T. Uejio* and *Kristin G. Shea* of counsel), for respondents in the second above-entitled action. I. The judicial exception of equitable estoppel is inapplicable to nullify the legislative policy expressed in the statutes of limitations because plaintiffs' amended complaint failed to allege the elements of an estoppel. (*Werking v Amity Estates,* 2 NY2d 43; *Simcuski v Saeli,* 44 NY2d 442; *Knight v Brown Transp. Corp.,* 806 F2d 479; *East Midtown Plaza Hous. Co. v City of New York,* 218 AD2d 628; *Irwin v Department of Veterans Affairs,* 498 US 89; *Gleason v Spota,* 194 AD2d 764; *Nevling v Chrysler Corp.,* 206 AD2d 221; *Leon v Martinez,* 84 NY2d 83; *Maas v Cornell Univ.,* 94 NY2d 87; *Windsor Metal Fabrications v General Acc. Ins. Co. of Am.,* 94 NY2d 124.) II. Plaintiffs' amended complaint fails to allege facts sufficient to plead a fiduciary relationship between each plaintiff and the Roman Catholic Diocese of Brooklyn. (*EBC I, Inc. v Goldman, Sachs & Co.,* 5 NY3d 11; *Sonnenschein v Douglas Elliman-Gibbons & Ives,* 96 NY2d 369; *Northeast Gen. Corp. v Wellington Adv.,* 82 NY2d 158; *Wende C. v United Methodist Church, N.Y. W. Area,* 4 NY3d 293; *Langford v Roman Catholic Diocese of Brooklyn,* 271 AD2d 494; *Doe v*

*Norwich R.C. Diocesan Corp.,* 268 F Supp 2d 139; *Martinelli v Bridgeport R.C. Diocesan Corp.,* 193 F3d 409; *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.,* 62 NY2d 110; *Serbian Eastern Orthodox Diocese for United States & Canada v Milivojevich,* 426 US 696; *Gonzalez v Roman Catholic Archbishop of Manila,* 280 US 1.)

Sidley Austin Brown & Wood LLP, New York City and Washington, DC (*Steven Bierman, Joseph R. Guerra* and *Eamon P. Joyce* of counsel), for American Tort Reform Association, amicus curiae in the second above-entitled action. I. Appellants seek a new form of equitable estoppel that would improperly override the legislative judgment embodied in the statute of limitations. (*Board of Regents of Univ. of State of N. Y. v Tomanio,* 446 US 478; *Flanagan v Mount Eden Gen. Hosp.,* 24 NY2d 427; *Duffy v Horton Mem. Hosp.,* 66 NY2d 473; *Ratka v St. Francis Hosp.,* 44 NY2d 604; *International Rys. of Cent. Am. v United Fruit Co.,* 373 F2d 408; *Johnson v Railway Express Agency, Inc.,* 421 US 454; *McCarthy v Volkswagen of Am.,* 55 NY2d 543; *Morales v County of Nassau,* 94 NY2d 218; *Rozell v Rozell,* 256 App Div 61, 281 NY 106; *Texas Industries, Inc. v Radcliff Materials, Inc.,* 451 US 630.)

**OPINION OF THE COURT**

CIPARICK, J.

In recent years, countless priests have been accused of impermissibly touching and sexually exploiting young people entrusted to their care, resulting in a plethora of claims seeking compensation for the injuries caused by these deplorable acts. Regrettably, many of these claims are time-barred, and absent relief from the Legislature will remain unredressed. Two such cases are before us today.

At the outset, we note that these cases present only the legal question whether equitable estoppel applies to toll the statutes of limitations for plaintiffs' claims. The merits of these claims are not before us and we have no occasion to pass upon the strength of the allegations. Plaintiffs, moreover, concede that the applicable statutes of limitations have expired. They assert, however, that defendants should be equitably estopped from invoking the statute of limitations as a defense. We conclude that the actions are time-barred.

### Zumpano v Quinn

Zumpano commenced this action in 2003 against defendant Father Quinn, as well as both the Bishop and Catholic Diocese

of Syracuse, alleging an ongoing abusive relationship beginning in 1963—when he was 13 years old—and continuing until 1970. The complaint, brought 33 years later, alleges causes of action for sexual abuse, battery, breach of fiduciary duty and negligent retention and/or supervision.

Defendants moved to dismiss the complaint under CPLR 3211 (a) (5), alleging that Zumpano's claims were barred by the appropriate statutes of limitations. In response, Zumpano argued that the statute of limitations should be tolled by CPLR 208 because he suffered from a mental disability created by defendants' conduct, rendering him unable to function in society or to protect his own legal rights. Supreme Court granted the motion and determined that Zumpano's claim was not tolled by the insanity provisions of CPLR 208, and was time-barred. The court also rejected the argument that equitable estoppel should be applied to toll the statute of limitations. The Appellate Division affirmed, finding that Zumpano failed to allege any separate acts by defendants—subsequent to the alleged abuse—that resulted in his delay in bringing this action. We now affirm.

### Estate of Boyle v Smith

Forty-two plaintiffs instituted this action in October 2002—likewise for clergy sexual abuse—against 13 individual priests, a monsignor and both the Bishop and the Roman Catholic Diocese of Brooklyn. The complaint alleges that each plaintiff was the victim of at least one sexually abusive act by a defendant priest. Most of the acts occurred while plaintiffs were minor children, between 1960 and 1985.[1] All plaintiffs apparently reached adulthood by 1990.

Plaintiffs asserted several causes of action, including intentional torts of sexual abuse and battery, and negligence causes of action such as failure to supervise, failure to warn and negligent retention. Plaintiffs also asserted a cause of action for breach of fiduciary duty. Specifically, plaintiffs alleged that the bishops and the Diocese were aware that the priests had abused children and that they engaged in a corrupt campaign and a pattern of concealment by failing to investigate and report the conduct to law enforcement authorities, transferring abusive priests to different parishes and making secret payments to victims and their families in return for their silence. As a result

---

1. Two plaintiffs allege that they were abused after the age of 18.

of this conduct, plaintiffs allege that they "were deprived of the knowledge of the essential factual elements which would have formed the basis of their rights to legal redress."

Defendants moved to dismiss the complaint under CPLR 3211 arguing, among other things, that the action was barred by the statute of limitations. As in *Zumpano*, plaintiffs conceded that the applicable limitations period had run, but asserted that defendants should be equitably estopped from invoking the statute of limitations as a defense. Supreme Court granted defendants' motion, finding that equitable estoppel did not apply because plaintiffs had adequate knowledge of the facts and circumstances underlying their claims and had sufficient time to inquire and discover the relevant facts before the statute of limitations expired. The court also found no fiduciary relationship between the parties.

The Appellate Division affirmed, concluding that plaintiffs had personal knowledge of the relevant facts yet failed to timely pursue their claims. Further, the Court noted that, even assuming the existence of a fiduciary relationship, equitable estoppel would not apply because they did not commence this action within a reasonable time after they reached the age of majority and were free from defendants' supervision and control. We now affirm.

## Equitable Estoppel

Although sometimes imposing hardship on a plaintiff with a meritorious claim, statutes of limitations "reflect the legislative judgment that individuals should be protected from stale claims" (*McCarthy v Volkswagen of Am.*, 55 NY2d 543, 548 [1982]). They cannot be deemed arbitrary or unreasonable solely on the basis of a harsh effect.

The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense.

> "Our courts have long had the power, both at law and equity, to bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding" (*General Stencils v Chiappa*, 18 NY2d 125, 128 [1966]).

Thus, this Court has held that equitable estoppel will apply "where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action" (*Simcuski v Saeli*, 44 NY2d 442, 449 [1978]). Moreover, the plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations (*see Simcuski*, 44 NY2d at 449).

Citing *General Stencils*, plaintiffs argue that defendants cannot be permitted to benefit from their own wrongdoing. In *General Stencils*, defendant was plaintiff's head bookkeeper who stole from her employer and concealed her theft for several years by misrepresenting the state of plaintiff's finances. We held that defendant was equitably estopped from asserting a statute of limitations defense precisely because her affirmative conduct in concealing the crime prevented plaintiff from timely bringing its action (*see* 18 NY2d at 128). A defendant/wrongdoer cannot take affirmative steps to prevent a plaintiff from bringing a claim and then assert the statute of limitations as a defense. However, if the doctrine of equitable estoppel were to be applied as broadly as plaintiffs suggest, the statute of limitations would rarely be available as a defense. Plaintiffs' proposed rule would revive any lapsed claim where the defendant inflicted some type of injury upon a knowing plaintiff but failed to come forward with further information about his or her wrongdoing.

It is therefore fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit (*see Matter of Steyer*, 70 NY2d 990, 993 [1988]). Plaintiffs have failed to satisfy this burden. As observed by the lower courts, each plaintiff was aware of the sexual abuse he or she suffered at the hands of defendant priests. Certainly they had sufficient knowledge to bring an intentional tort cause of action against the individual priests. Plaintiffs were likewise aware that the priests were employees of the dioceses and could have brought actions against the dioceses, or at least investigated whether a basis for such actions existed. Plaintiffs do not allege they made timely complaints to the dioceses regarding clergy mistreatment. Subsequent conduct by the dioceses did not appear in any way to alter plaintiffs' early awareness of the essential facts and circumstances underlying their causes of action or their ability to timely bring their claims.

It is not enough that plaintiffs alleged defendants were aware of the abuse and remained silent about it. The *Boyle* plaintiffs allege that defendants had knowledge of the ongoing problem

that children were being sexually abused by priests and failed to notify or warn plaintiffs of same. They also allege that, for over 40 years, defendants did not report abuse by priests to law enforcement officials; reassigned offending priests without disclosure of their offenses; and, when victims complained, made private payments to them so that the charges would not be publicized. Conduct like this might be morally questionable in any defendant, let alone a religious institution, but it is not fraudulent concealment as a matter of law. A wrongdoer is not legally obliged to make a public confession, or to alert people who may have claims against it, to get the benefit of a statute of limitations. Plaintiffs do not allege any specific misrepresentation to them by defendants, or any deceptive conduct sufficient to constitute a basis for equitable estoppel. Nor is there any indication that further discovery would yield such information. No new separate and subsequent acts of wrongdoing beyond the sexually abusive acts themselves are alleged, and equitable estoppel is therefore inapplicable to these cases.

## Fiduciary Relationship

As a separate basis for equitable estoppel, the *Boyle* plaintiffs argue that defendants breached a fiduciary duty owed to them by concealing their own actions in covering up the abuse.[2] "Where concealment without actual misrepresentation is claimed to have prevented a plaintiff from commencing a timely action, the plaintiff must demonstrate a fiduciary relationship . . . which gave the defendant an obligation to inform him or her of facts underlying the claim" (*Gleason v Spota*, 194 AD2d 764, 765 [2d Dept 1993]). We recently left open the question whether a fiduciary relationship existed between a cleric and a congregant (*see Wende C. v United Methodist Church, N.Y. W. Area*, 4 NY3d 293, 299 [2005]). It is likewise unnecessary to answer that question here.

Even if the Court were to assume that a fiduciary relationship existed between the parties during plaintiffs' infancy and that the diocesan defendants had a legal duty to disclose any knowledge of prior incidents of sexual abuse and breached that duty, plaintiffs still failed to demonstrate how that breach

---

2. Plaintiffs in both cases have pleaded a separate breach of fiduciary duty cause of action premised on defendants' knowledge, misrepresentation, concealment and failure to disclose information. In this section, we discuss only an alleged breach of fiduciary duty as it relates to pleading equitable estoppel.

prevented them from bringing a timely action. As noted above, defendants' concealment of their own actions and of the priests' conduct, postwrongdoing, does not alter the fact that plaintiffs were fully aware that they had been abused. Plaintiffs also knew the identity of their abusers and that the abusers were employed by the Diocese. They failed to establish that any concealment by defendants changed their awareness of these facts or that defendants had a direct role in plaintiffs' failure to file suit within an appropriate time period. Thus, plaintiffs did not demonstrate that defendants' failure to inform them of certain facts contributed to their delay in bringing this action. Plaintiffs possessed timely knowledge of the actual misconduct and the relationship between the priests and their respective dioceses to make inquiry and ascertain relevant facts prior to the running of the statute of limitations.

There is also no basis for a claim that any fiduciary duty continued after plaintiffs were adults—and all the plaintiffs reached adulthood in 1990 or earlier, more than a decade before bringing suit. Even assuming that a breach of fiduciary duty continued until then, and was sufficient to support a finding of equitable estoppel, plaintiffs were required to proceed with their lawsuit, or at least with an inquiry into the facts, within the statutory limitations period computed from the time "the conduct relied on [as a basis for equitable estoppel] ceases to be operational" (*Simcuski*, 44 NY2d at 450). Thus, the alleged breach of fiduciary duty cannot estop defendants from relying on the time that elapsed after the alleged fiduciary relationship no longer existed.

### Insanity Toll

■ Zumpano alone argues that he suffers from a mental disability as a direct result of defendants' abuse and that he was consequently rendered incapable of protecting his legal rights. He no longer argues that CPLR 208 tolls the statute of limitations,[3] but contends that defendants should be equitably estopped from asserting the statute of limitations since their

---

3. "If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, . . . [t]he time within which the action must be commenced shall not be extended by this provision beyond ten years after the cause of action accrues, except . . . where the person was under a disability due to infancy" (CPLR 208).

misconduct caused his insanity. This argument also lacks merit as he fails to establish a continuing disability. The record reflects that, as an adult, Zumpano held a full-time job for nine years. He also successfully prosecuted a personal injury action on his own behalf in 1986. As a matter of law, these facts contradict the assertion that Zumpano suffered from an ongoing mental disability and was unable to protect his rights.

Finally, our holding here is in keeping with those in several other jurisdictions addressing similar issues (*see e.g. Baselice v Franciscan Friars Assumption BVM Province, Inc.*, 2005 PA Super 246, 879 A2d 270 [2005] [doctrine of fraudulent concealment inapplicable to toll the statute of limitations where plaintiff failed to allege any affirmative act of concealment causing him to delay bringing suit]; *Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 692 NW2d 398 [2004] [fraudulent concealment unavailable to toll the statute of limitations where plaintiff knew or should have known about his claims against defendants]; *Mark K. v Roman Catholic Archbishop of Los Angeles*, 67 Cal App 4th 603, 79 Cal Rptr 2d 73 [1998] [finding estoppel by concealment inapplicable to toll the statute of limitations because plaintiff was aware of his injury, the priest's identity and his connection with the church]; *Doe v Archdiocese of Washington*, 114 Md App 169, 689 A2d 634 [1997] [statute of limitations was not tolled by the fraudulent concealment doctrine where plaintiff did not allege any acts subsequent to the abuse that prevented him from being aware of his claims]; *compare Martinelli v Bridgeport R.C. Diocesan Corp.*, 196 F3d 409, 430 [2d Cir 1999] [finding evidence to support the jury's determination that there was a fiduciary relationship between Martinelli and the diocese and that the diocese owed him a duty to investigate and to warn him in order to prevent harm]).

We conclude as we began: however reprehensible the conduct alleged, these actions are subject to the time limits created by the Legislature. Any exception to be made to allow these types of claims to proceed outside of the applicable statutes of limitations would be for the Legislature, as other states have done.[4]

Accordingly, in each case, the order of the Appellate Division should be affirmed, with costs.

---

4. *See e.g.* Conn Gen Stat § 52-577d (extending the time period for minors to bring sexual abuse claims to 30 years from the age of majority); Cal Code Civ Proc § 340.1 (c) (creating a one-year window in 2003 for childhood sexual abuse actions where the applicable statute of limitations had expired).

G.B. SMITH, J. (dissenting in *Estate of Boyle v Smith*). The complaint alleges facts that arguably could result in the defendants being equitably estopped from asserting the bar of the statute of limitations. I conclude, however, that those allegations are not sufficiently specific to preclude the statute of limitations defense here. Thus, I join the disposition to the extent that the present complaint is dismissed. I would permit the plaintiffs to replead their claims.

On October 8, 2002, 42 plaintiffs filed a complaint against 13 priests, a monsignor, a bishop and the Roman Catholic Diocese of Brooklyn alleging sexual abuse. The plaintiffs attended religious services at parishes in Queens and Brooklyn, New York in the 1960s, 1970s, and the early 1980s. The abuse is alleged to have occurred in various locations in and around the State of New York. The complaint makes a number of tort claims, including sexual abuse and battery against both boys and girls, intentional infliction of emotional distress, failure to remove, failure to supervise, failure to investigate, failure to warn, failure to provide a safe environment, fraud and breach of fiduciary duty. On December 9, 2002, plaintiffs filed an amended complaint alleging fraudulent concealment of the abuse and secret payments to the victims to prevent them from disclosing the abuse.

In order to prevent the plaintiffs from publicizing the abuse, the plaintiffs allege that the defendants "engaged in a covert policy and practice to conceal the problem of the sexual abuse of children by parish clergy," "engaged in the routine practice of transferring abusive priests to new parishes," "made secret payments to victims in return for the victims' silence, maintained secret church accounts to make such payments, intentionally failed to investigate complaints of sexual abuse . . . by defendant priests and others, did not attempt to ascertain if there were other victims of a particular offending priest once they received information that he had in fact sexually abused a child and intentionally failed to warn plaintiffs, their parents or other potential victims or parishioner parents of the danger posed by a known sexually abusive priest."

All plaintiffs were adults by 1990. They allege that defendants are equitably estopped from raising the statute of limitations defense because of their fraud, misrepresentation, and concealment.

On November 18, 2002, defendants filed a motion to dismiss the complaint. Plaintiffs filed a memorandum of law in opposi-

tion. The CPLR 3211 (a) (5)[1] motion was heard on January 28, 2003.

On April 11, 2003, Supreme Court, Queens County granted the motion and determined:

> "Inasmuch as all of the plaintiffs had reached the age of majority by 1990, they do not dispute that the Statute of Limitations for all the claims asserted herein expired prior to the commencement of this action (see, CPLR 208, 213, 214 and 215[c] [*sic*]) . . . .
>
> "Inasmuch as the plaintiffs were the objects of the sexual abuse alleged herein, and they were aware of what was happening to them when the incidents occurred, they clearly possessed personal knowledge of the facts giving rise to their intentional tort claims when those claims accrued, as well as sufficient time to ascertain the facts alleged in relation to their breach of fiduciary duty and negligence claims prior to the running of the limitations period" (citation omitted).

On February 7, 2005, Appellate Division, Second Department, affirmed the decision of the trial court and wrote:

> "A defendant may be estopped from pleading the statute of limitations as a defense where, by fraud, misrepresentation, or deception, he or she has induced a plaintiff to refrain from filing a timely action. However, due diligence on the part of a plaintiff in bringing the action is an essential element of equitable estoppel. If a plaintiff possesses sufficient knowledge of the possible existence of a claim, he or she is under a duty to make inquiry and ascertain all the relevant facts before the statute of limitations expires.
>
> "Here, the plaintiffs possessed personal knowledge

---

1.  "Motion to dismiss cause of action. A party may move for judgment dismissing one or more causes of action asserted against him on the ground that: . . .
    "the cause of action may not be maintained because of arbitration and award, collateral estoppel, discharge in bankruptcy, infancy or other disability of the moving party, payment, release, res judicata, statute of limitations, or statute of frauds." (CPLR 3211 [a] [5].)

of the facts underlying their intentional tort claims from the time of the offenses, and they also knew that the priests were employed by the Diocese. Despite this knowledge, the plaintiffs did not pursue their claims at an earlier time. Moreover, even assuming that the plaintiffs alleged sufficient facts to establish a fiduciary relationship between themselves and the Diocesan defendants, equitable estoppel is not applicable on this basis. As all of the plaintiffs reached the age of majority by 1990, their allegations failed to establish that they brought this action within a reasonable time after they became adults, when they were no longer subject to the supervision and influence of those defendants" (15 AD3d 338, 339-340 [2005] [citations omitted]).

On June 16, 2005, the Court of Appeals granted leave to appeal.

## Arguments of the Parties

Plaintiffs do not argue that the statute was tolled pursuant to the exceptions in CPLR 208, 213, 214 or 215 (3). Rather, they maintain that defendants are equitably estopped from asserting the defense of the statute of limitations because defendants committed fraud, misrepresentation, and concealment which prevented plaintiffs from filing complaints against defendants for many years. Plaintiffs allege that the defendant priests were employed by the diocesan defendants and that defendants engaged in a campaign of deceit to prevent the plaintiffs from bringing a lawsuit against them. Because of the "assigning, transferring, suspending and removing of parish clergy," plaintiffs claim that they were unable to get all the needed information to file charges against the church. Also, plaintiffs maintain that they did not have a due diligence requirement because defendants actively prevented them from pursuing their legal rights.

Plaintiffs also allege that the defendants stood in a fiduciary relationship to the plaintiffs and, thus, were responsible for ensuring a safe environment for religious instruction. Plaintiffs allege that this is an independent basis for pleading equitable estoppel and that because of defendants' breach of fiduciary duty, there was no due diligence requirement in pursuing legal claims.

Defendants argue that plaintiffs' failure to comply with the statute of limitations is fatal to their lawsuit. Defendants argue

that the courts have consistently adhered to statutes of limitations, and this case does not present facts to toll those statutes. According to defendants, plaintiffs cannot prevail on a claim of equitable estoppel because they have failed to demonstrate that the defendants made any representations which they relied on to their detriment. Plaintiffs, they argue, did not show due diligence in pursuing their claims against the defendants. Lastly, plaintiffs did not demonstrate that defendants had a duty to act on behalf of the plaintiffs. Rather, only an association, not a fiduciary duty, existed between plaintiffs and the defendants. According to defendants, such an association is not actionable.

## The Motions for Summary Judgment

The motion court granted summary judgment to defendants pursuant to CPLR 3211 (a) (5). The motions were granted based upon a violation of the statute of limitations (*see* CPLR 3211 [a] [5]). In a CPLR 3211 motion, the facts in the pleadings must be construed in favor of the nonmovant (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994] [a court must "accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory"]).

"As a general proposition, it is upon injury that a legal right to relief arises in a tort action and the Statute of Limitations begins to run (*see,* CPLR 203 [a]; *see also, Aetna Life & Cas. Co. v Nelson*, 67 NY2d 169, 175)" (*see Ackerman v Price Waterhouse*, 84 NY2d 535, 541 [1994]).

In *Boyle*, plaintiffs allege abuse from 1960 until 1985. All of the plaintiffs were adults by 1990.[2] The statute of limitations for tort actions for negligence, breach of fiduciary duty, and

---

2. Plaintiffs allege in their complaint:
   "118. DAILY, THE BISHOPS and the DIOCESE intentionally and fraudulently engaged in the routine practice of transferring abusive priests to new parishes, both within and outside the DIOCESE. To conceal the sexual abuse, DAILY, THE BISHOPS and the DIOCESE also maintained secret files regarding such priests, made secret payments to victims in return for the victims' silence, maintained secret church accounts to make such payments, intentionally failed to investigate complaints of sexual abuse, did not disclose to plaintiffs, their families or other parishioners for that matter, the fact that they were aware of the problem of sexual abuse of children and aware of specific incidents of abuse by defendant priests and others, did not attempt to ascertain if there were other victims of a particular offending priest once they received information that he had in fact

fraud allows up to six years after the event to file an action against the defendants (see CPLR 213 [1], [8]).[3] Thus, while the cause of action for breach of fiduciary duty may have been time-barred, the time limitation for fraud, concealment, and misrepresentation would have run from the time that plaintiff or, in this case, a guardian discovered the fraud or could have discovered the fraud with reasonable diligence. Tolling occurs for infancy and insanity (see CPLR 208). In the case of infancy, plaintiffs may have up to, but no more than, three years beyond the end of the disability to file an action. At the outside limit, plaintiffs had until 1993 to file against the perpetrators. The *Boyle* action was not filed until 2002, and, thus, was time-barred on the statutory requirements (see CPLR 213 [8]).

## Equitable Estoppel

There is no question that the *Boyle* plaintiffs knew that they had been sexually abused at the time of the incidents and that they knew the perpetrators. Further, each reached adulthood more than 10 years prior to the filing of the action. The *Boyle* plaintiffs do not claim a disability which would have interfered with the filing of the action; rather, they claim that defendants should be equitably estopped from asserting a statute of limitations defense because defendants interfered with plaintiffs filing their lawsuit by a "campaign" of deception, misrepresentation, and facilitation of the abuse by transferring and reassigning priests who committed abuse. Certainly, if such a campaign did in fact occur, there was an attempt to conceal wrongdoing which could have prevented plaintiffs from filing their lawsuit sooner. The allegations of sexual abuse are acts for which parents and child victims old enough to protest would normally seek some

---

sexually abused a child and intentionally failed to warn plaintiffs, their parents or other potential victims or parishioner parents of the danger posed by a known sexually abusive priest. . . .

"167. DAILY, THE BISHOPS and the DIOCESE intentionally, recklessly and negligently breached their fiduciary duty to the plaintiffs."

3. CPLR 213 (1) and (8) read:

"The following actions must be commenced within six years:

"1. an action for which no limitation is specifically prescribed by law . . .

"8. an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."

form of redress. Nevertheless, they did not. The question is whether the actions of the defendants contributed to the plaintiffs' failure to timely seek redress.

The courts will not bar the assertion of equitable estoppel when plaintiff is unable to file a lawsuit because of "defendant's affirmative wrongdoing" (see General Stencils v Chiappa, 18 NY2d 125, 128 [1966]).

> "Our courts have long had the power, both at law and equity, to bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing—a carefully concealed crime here—which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding" (id.).

The allegations of affirmative wrongdoing must be "sufficiently pleaded" by the plaintiffs in order for the court to find that plaintiffs fall within the protection of the rule of equitable estoppel (see Simcuski v Saeli, 44 NY2d 442, 449 [1978]). Further, plaintiffs must demonstrate that they relied on defendants' fraud, misrepresentation, and deception to their detriment (see Securities Inv. Protection Corp. v BDO Seidman, 95 NY2d 702, 709 [2001]; People v Begole, 27 NY2d 138, 148 [1970]).

The problem with the allegations in the amended complaint is that they do not go far enough. While the plaintiffs allege, generally, transfers and payments and efforts to dissuade persons from reporting criminal activities to appropriate bodies, the allegations are not attributable to the plaintiffs here. If the current plaintiffs had been the target of the allegations asserted and alleged specific instances, the door would be opened to permitting discovery to aid in the pursuit of the establishment of the claims alleged.

## Due Diligence

When plaintiffs claim that defendants should be equitably estopped from asserting a statute of limitations bar, they must show "due diligence" in bringing the action (see Simcuski, 44 NY2d at 450, supra). By due diligence, the Court means that as soon as the plaintiff learns of the misrepresentation, plaintiff must seek to bring an action against defendant (see id.). In the case at bar, plaintiffs allege the misrepresentation and concealment was widespread and they still do not know the extent of the abuse perpetrated against children by priests at the Brooklyn Diocese. As a result, plaintiffs argue, due diligence

was also thwarted by the Diocese, a fact that lends further support to the claim that defendants should be equitably estopped from claiming a statute of limitations bar. Because of the summary judgment motion, plaintiffs have not had the opportunity to conduct discovery. Nevertheless, to proceed with their action, plaintiffs must make out a better case than made here of the efforts made to comply with the requirement of due diligence.

## Purpose of Statutes of Limitations

Statutes of limitations not only limit the right but also the remedy (*see Ratka v St. Francis Hosp.*, 44 NY2d 604, 611 [1978], *overruled on other grounds by Burke v Crosson*, 85 NY2d 10 [1995]). Plaintiffs assert that had they had full knowledge of the sexual abuse, they would have been able to seek criminal actions against defendants.

Ordinarily, statutes of limitations function as statutes of repose (*see Flanagan v Mount Eden Gen. Hosp.*, 24 NY2d 427, 429-430 [1969]). Thus, time bars serve to "put to sleep" all claims that are not brought once all the facts and circumstances are known by the plaintiffs about the claim (*see Blanco v American Tel. & Tel. Co.*, 90 NY2d 757, 773-774 [1997]). Nevertheless, the policy considerations of repose, at issue in cases where the statute of limitations has run, do not outweigh the policy considerations of addressing affirmative wrongdoing (*see Wood v Carpenter*, 101 US 135, 139 [1879]).[4]

## The Case for Repleading

The applicable principle in this case is that a defendant cannot benefit from his own wrongdoing (*see Chiappa, supra*). Unlike *Zumpano* (decided today), many perpetrators were involved in *Estate of Boyle* and the alleged abuse involved more than 40 plaintiffs over a 25-year period. Given the extent and breadth of the alleged abuse, defendants should not benefit from the running of the statute of limitations. Defendants allegedly retained a number of unscrupulous priests for a long period of time. The facts and circumstances alleged, if true, demonstrate affirmative wrongdoing.

---

**4.** "Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together." (*Id.*)

While it is insufficient for the plaintiffs to make only general allegations of deception and misrepresentation, plaintiffs have asserted sufficient facts to permit another pleading that may permit this case to proceed.

First, in paragraph 115 of the amended complaint, plaintiffs quote Bishop Wilton D. Gregory, former President of the United States Conference of Catholic Bishops, who stated:

> "We are the ones, whether through ignorance or lack of vigilance, or—God forbid—with knowledge, who allowed priest abusers to remain in ministry and reassigned them to communities where they continued to abuse. We are the ones who chose not to report the criminal actions of priests to the authorities, because the law did not require this. We are the ones who worried more about the possibility of scandal than in bringing about the kind of openness that helps prevent abuse. And we are the ones who, at times, responded to victims and their families as adversaries and not as suffering members of the Church."

Second, the amended complaint alleges sexual abuse by specifically named priests and alleges that these priests were transferred from place to place to avoid detection that they were sexual abusers. Third, while the allegations of a secret fund and payments to persons to prevent their publicizing abuse are not specific as to names, enough has been shown to permit a further pleading and perhaps discovery concerning these issues.

Fourth, the claims of breach of a fiduciary duty cannot be ignored. Plaintiffs maintain that defendants had a fiduciary relationship with them and, thus, had a duty to protect them from sexual molestation (*see Wende C. v United Methodist Church, N.Y. W. Area*, 4 NY3d 293, 299 [G.B. Smith, J., dissenting in part, 2005]). The majority concludes that it is not necessary to determine that question here. It further concludes that even if such a fiduciary duty existed, it would not prevent plaintiffs from making timely claims against the defendants.

A claim of a breach of a fiduciary duty has been upheld against clergy persons in other jurisdictions (*F.G. v MacDonell*, 150 NJ 550, 555, 696 A2d 697, 700 [1997]; *Sanders v Casa View Baptist Church*, 134 F3d 331 [5th Cir (Tex) 1998]; *Destefano v Grabrian*, 763 P2d 275, 284 [Colo 1988]). These cases all involved adults. In a proper case, however, a claim of breach of a fiduciary duty

can be made against a person in a position of trust involving children.

The issue of the fiduciary relationship between plaintiffs and defendants is an issue of fact to be determined at trial (*see EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]). "A fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation' " (*see id.*, quoting Restatement [Second] of Torts § 874, Comment *a*). Whether or not a fiduciary relationship existed, coupled with whether or not the defendants were actively concealing abuse, are central to determining whether or not plaintiffs are prevented from pursuing claims against defendants. Defendants were the keepers of all information on the priests and were in the best position to provide the plaintiffs with the facts relevant to the abuse of the children, and to act on the abuse. Plaintiffs should not be barred from pursuing their claims if defendants had a fiduciary relationship with the plaintiffs, and misrepresentations and concealment are shown to be the reason for the delay in pursuing their claims.

Finally, this is a case where anyone would wish the allegations did not exist. Since they have been made, the question is whether they are sufficient to permit the lawsuit to proceed. The allegations are sufficient to permit additional pleading.

For all of the above reasons and specifically because there is alleged evidence of wrongdoing which would equitably estop defendants from asserting the defense of the statute of limitations, plaintiffs should be allowed to replead to demonstrate that defendants engaged in a pattern of deception, fraud, and misrepresentation which prevented them from filing a complaint within the statute of limitations period.

Chief Judge KAYE and Judges G.B. SMITH, ROSENBLATT, GRAFFEO and R.S. SMITH concur; Judge READ taking no part.

In *Zumpano v Quinn:* Order affirmed, with costs.

Chief Judge KAYE and Judges ROSENBLATT, GRAFFEO and R.S. SMITH concur with Judge CIPARICK; Judge G.B. SMITH dissents in part in a separate opinion; Judge READ taking no part.

In *Estate of Boyle v Smith:* Order affirmed, with costs.