■ WILLIS E. SEARS et al., Appellants, v FIRST PIONEER FARM CREDIT, ACA, Respondent. (And a Third-Party Action.) [850 NYS2d 219]—

Crew III, J.P. Appeal from a judgment of the Supreme Court (Krogmann, J.), entered January 9, 2007 in Washington County, which, among other things, ordered the sale of certain mortgaged property.

Plaintiff Willis E. Sears managed and ran all aspects of plaintiffs' dairy farm and apple orchard for a number of years. Beginning in the 1980s, Sears established a relationship with defendant—more specifically, one of its then loan officers, Christopher Truso. In the years that followed, Sears routinely sought and received annual operating loans from defendant to, among other things, facilitate the harvesting of plaintiffs' crops. In September 1994, Sears suffered a stroke, and he remained hospitalized until December of that year. Although he returned to the farm after that, Sears was unable to participate in the daily operation of the farm to the extent he had in the past, and additional personnel were brought in to assist with the physical labor.

After suffering a significant loss due to the poor price received for the 1995 apple crop, Sears refinanced his loans and took out an additional loan to pay back taxes and finance the 1996 fall apple harvest. Due to the prior operating losses sustained, defendant required Sears to obtain a guarantee from the Farm Service Agency (hereinafter FSA). FSA would guarantee only $700,000 and, as a result, defendant loaned Sears the additional $171,000. These loans were secured by mortgages on certain of plaintiffs' real property, as well as a lien on all livestock, machinery and equipment. Unfortunately, plaintiffs' financial difficulties persisted and Sears filed for bankruptcy in 2001.

Plaintiffs commenced this action in July 2002 alleging breach of fiduciary duty, breach of obligation of fair dealing, fraud, negligence and breach of various federal laws and regulations and seeking rescission of the underlying loan agreements. Defendant then brought a counterclaim and third-party action seeking, among other things, foreclosure* and, in response thereto, plaintiffs raised the affirmative defense of lack of capacity. Supreme Court thereafter dismissed plaintiffs' causes of action for breach of fiduciary duty, breach of obligation of fair dealing and negligence upon statute of limitations grounds and discovery ensued.

Ultimately, defendant moved for summary judgment dismissing plaintiffs' remaining causes of action and their affirmative defense, and plaintiffs cross-moved to amend their complaint to assert a cause of action for negligent misrepresentation. Supreme Court granted defendant's motion for summary judgment dismissing plaintiffs' remaining causes of action, granted defendant summary judgment on its foreclosure action, denied plaintiffs' cross motion to amend the complaint and thereafter appointed a referee to determine the amount due under the mortgages. The referee's report was filed in October 2006, and defendant thereafter moved for, among other things, confirmation of the referee's report and reasonable counsel fees. Plaintiffs opposed the motion, noting that no hearing was held with respect to the referee's report and requesting a hearing on the amount of the counsel fees sought. Supreme Court granted defendant's motion and, in its January 2007 judgment of foreclosure and sale, confirmed the referee's award of $465,578.15, awarded defendant counsel fees in the amount of $175,036.38 and ordered that the subject properties be sold. This appeal by plaintiffs ensued.

Plaintiffs initially contend that Supreme Court erred in dismissing their cause of action seeking rescission of the underlying loan agreements because a question of fact exists as to Sear's competency at the time he executed the July 1996 loan documents. In this regard, the case law makes clear that "a person is presumed to be competent at the time of the performance of the challenged action and the burden of proving incompetence rests with the party asserting incapacity" (*Matter of Obermeier*, 150 AD2d 863, 864 [1989]). Thus, to prevail, plaintiffs had to demonstrate that Sears' mind was "so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction" (*Aldrich v*

---

* The bankruptcy stay was lifted to permit commencement of the foreclosure action.

*Bailey*, 132 NY 85, 89 [1892]) and, further, that such incompetency/incapacity existed when he executed the loan documents in July 1996 (*see Feiden v Feiden*, 151 AD2d 889, 890 [1989]; *Matter of Obermeier*, 150 AD2d at 864). The record as a whole falls far short of meeting this burden.

To be sure, Sears suffered various physical limitations following his stroke and was unable to perform the actual labor necessary to run the farm on a daily basis; his speech was somewhat slurred, he experienced hearing difficulties and he read at a slower pace. Such proof, however, does not establish that Sears was incapacitated in July 1996. Although his wife now asserts that the entire loan transaction was completely beyond his comprehension at that point in time, it bears noting that she did not attend the closing because Sears had requested operating loans in the past and such transactions had become a "familiar pattern." Simply put, neither hindsight nor regret establishes incompetency. Nor are we persuaded by the affidavit of Sears' treating psychiatrist, who opined, in a conclusory and unsubstantiated fashion, that Sears was not competent to engage in any business transactions following his stroke. Although the psychiatrist describes Sears as "grossly handicapped" as of July 1996, there is nothing in his or his wife's examination before trial testimony to lend credence to that statement. Accordingly, we have no quarrel with Supreme Court's decision to dismiss the cause of action seeking rescission.

We reach a similar conclusion with regard to the cause of action for fraud. Actual fraud requires "a misrepresentation, known by the defendant[ ] to be false and made for the purpose of inducing the plaintiff to rely upon it, justifiable reliance and damages" (*Van Kleeck v Hammond*, 25 AD3d 941, 943 [2006] [internal quotation marks and citation omitted]). While plaintiffs allege that defendant represented that the 1996 loan transaction would be beneficial to them, "[t]he mere fact that the expected performance was not realized is insufficient to demonstrate that [defendant] falsely stated its intentions" (*Edelman v Buchanan*, 234 AD2d 675, 676 [1996] [internal quotation marks and citations omitted]). Plaintiffs already were in financial peril at the time that Sears executed the relevant loan documents, the July 1996 transaction only marginally raised plaintiffs' indebtedness and it appears that there were two possible paths to pursue at that point—refinance, borrow additional money and hope for a good harvest in 1996 or begin liquidating assets then and there. The fact that, with the benefit of hindsight, plaintiffs perhaps should have chosen the latter course does not render the underlying transaction fraudulent.

As to the issue of constructive fraud, such a claim is stated where, irrespective of actual intent to deceive, the plaintiff can show that a confidential or fiduciary relationship existed between the parties (*Williams v Lynch*, 245 AD2d 715, 717 [1997], *appeal dismissed* 91 NY2d 957 [1998]). Such a relationship exists where "one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge" (*Doe v Holy See [State of Vatican City]*, 17 AD3d 793, 795 [2005], *lv denied* 6 NY3d 707 [2006] [internal quotation marks and citation omitted]). Where a party is seeking to establish such a relationship with an institutional defendant, he or she bears the burden of showing that the relationship was "unique or distinct" from the relationship the institution typically enjoyed with individuals (*Robare v Fortune Brands, Inc.*, 39 AD3d 1045, 1047 [2007], *lv denied* 9 NY3d 810 [2007] [internal quotation marks and citation omitted]). Notably, a fiduciary relationship usually does not exist in arm's length transactions between debtors and creditors (*see Landes v Sullivan*, 235 AD2d 657, 660 [1997]).

Here, plaintiffs established nothing more than the fact that Sears and Truso socialized on occasion. Sears was a seasoned and experienced farmer, and while he plainly relied upon Truso over the years to procure for him the funds necessary to operate his farm, there simply is nothing in the record to suggest that Sears relied upon Truso for financial advice. Having failed to establish the existence of a confidential or fiduciary relationship, plaintiffs' cause of action for constructive fraud was properly dismissed, and their cross motion to amend the complaint to assert a cause of action for negligent misrepresentation was properly denied.

We do, however, find merit to plaintiffs' claim that Supreme Court erred in confirming the referee's report. Assuming, without deciding, that plaintiffs could and did waive the hearing upon notice requirement contained in CPLR 4313, the case law nonetheless reflects that it is error to confirm a referee's report without either conducting a hearing on notice or otherwise affording the contesting party an opportunity to present its own proof or challenge the referee's computations (*see Shultis v Woodstock Land Dev. Assoc.*, 195 AD2d 677, 678-679 [1993]). As the record fails to reflect that Supreme Court, as the ultimate arbiter of the dispute, afforded plaintiffs an opportunity to contest or contradict the figures contained in the referee's report, and as it is clear that no hearing occurred, Supreme Court erred in confirming the referee's report. Accordingly, this matter must be remitted to Supreme Court in order to afford

plaintiffs some opportunity to respond to the figures contained in the referee's report.

We reach a similar conclusion with regard to the award of counsel fees. While we agree that paragraph No. 8 of the underlying promissory note is sufficiently broad to permit the recovery of counsel fees beyond the narrow confines of foreclosure, the award of such fees nonetheless is committed to the sound discretion of the trial court upon due consideration of various factors, including but not limited to "the time commitment involved, the relative difficulty of the matter, the nature of the services provided, counsel's experience and the results obtained" (*Matter of Rose BB.*, 35 AD3d 1044, 1046 [2006], *appeal dismissed* 8 NY3d 936 [2007]). Our review of Supreme Court's decision on this point evidences no indication that any such analysis occurred, and the mere fact that counsel submitted detailed bills and documented the expenses incurred in litigating every possible aspect of this matter does not automatically warrant an award of counsel fees in excess of $175,000. Some analysis of those figures and consideration of whether the sum sought indeed is reasonable must occur prior to making any award. Plaintiffs' remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, Spain, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.