■ DOWLINGS, INC., Appellant, v HOMESTEAD DAIRIES, INC., et al., Respondents. [932 NYS2d 192]—

Garry, J.

Defendant Homestead Dairies, Inc., a family-owned New York corporation, formerly operated four retail stores in St. Lawrence County. In the late 1990s, its principals and corporate officers were defendant Robert Squires Sr. (hereinafter the father) and his children, defendants Robert Squires Jr. (hereinafter the son), Jane Squires Ward and David Squires. Plaintiff, a Vermont corporation operating a wholesale goods business, supplied merchandise to Homestead. By 1999, Homestead was experiencing financial difficulties that prevented it from paying plaintiff and other creditors. Homestead attempted to salvage its business by, among other things, retaining a business consultant to devise a turn-around plan and requesting additional credit from plaintiff. Plaintiff granted this request, but Homestead eventually closed its stores and filed bankruptcy proceedings.

In August 2004, plaintiff commenced this action seeking to recover damages for unpaid invoices and related costs and asserting claims of fraud and fraudulent conveyance (*see* Debtor and Creditor Law §§ 273, 274, 275, 276). Supreme Court permitted plaintiff to amend the complaint several times. In the course of the proceedings, the court also held, among other things, that plaintiff could not pierce the corporate veil to hold the individual defendants liable for Homestead's debts, granted partial summary judgment dismissing all claims against Jane Squires Ward and David Squires, and limited plaintiff's remaining causes of action to a claim of fraud against the father restricted to conduct occurring on or after August 26, 1998, and claims against the son of fraudulent conveyance under Debtor and Creditor Law §§ 273, 274, 275 and 276 for conduct occurring between August 26, 1998 and December 1998. In March 2010, the court denied plaintiff's motion to serve a fourth amended complaint, holding, among other things, that having been put to its proof on prior summary judgment motions, plaintiff could not submit additional proof as to the applicable statute of limitations. When plaintiff moved to amend its complaint a fifth time, defendants cross-moved for summary judgment dismissing all claims against them. In December 2010, the court granted defendants' motion and dismissed the fifth amended complaint in its entirety. Plaintiff appeals.

Initially, plaintiff asserts that Supreme Court erred in restricting its fraud and fraudulent conveyance claims to conduct occurring after August 25, 1998—that is, six years before the action was commenced. "A fraud cause of action must be commenced within six years from the time the fraud was committed or within two years from the time the fraud was discovered or could have been discovered through reasonable diligence" (*Giarratano v Silver*, 46 AD3d 1053, 1056 [2007]; *see* CPLR 213 [8]; *Sargiss v Magarelli*, 12 NY3d 527, 532 [2009]). Plaintiff asserts that the father induced it to grant Homestead additional credit by misrepresenting Homestead's ability to pay its debts at a time when he allegedly knew that Homestead was insolvent and would be unable to make the payments. Plaintiff's president, John Mitiguy, testified that the challenged statement was made at a meeting that took place sometime in 1998, but he was unable to identify the date.[1] Plaintiff argues that the action is timely even if the statement was made before August 25, 1998, because the two-year discovery limitations period should have been applied, rather than the six-year period. In September 2001, however, Homestead's business consultant communicated to Mitiguy via e-mail, stating that Homestead was in severe financial distress, and reporting his discovery of "many items that have been committed fraudulently by the Squires Family." The consultant described allegedly preferential payments to certain creditors and asserted that the company had "substantial" hidden assets.[2] Mitiguy acknowledged receipt of this e-mail, and was thus shown to be aware of the consultant's allegations of fraud, but the action was not commenced until more than two years later. We therefore agree with Supreme Court's application of the six-year limitations period of CPLR 213 (8), and find that plaintiff's claim was appropriately limited.

We reject plaintiff's claim that defendants are estopped from relying on the statute of limitations because their conduct caused it to delay commencing the action. Mitiguy testified that he did not remember having any conversations with members of the Squires family after a meeting that took place in 1999, and there is no evidence that "subsequent and specific actions by defendants somehow kept [plaintiff] from timely bringing suit" (*Pulver v Dougherty*, 58 AD3d 978, 980 [2009], quoting *Zumpano v Quinn*, 6 NY3d 666, 674 [2006]; *see Cellupica v Bruce*, 48 AD3d 1020, 1021 [2008]).

---

**1.** His recollection was limited to asserting that there was no snow on the ground at the time.
**2.** The business consultant disavowed these claims in a subsequent deposition.

Next, we agree with Supreme Court that even if the alleged misrepresentation was made after August 25, 1998 so that the fraud claim is timely, plaintiff did not establish the existence of material issues of fact as to whether a fraud occurred. To prove this claim, plaintiff must establish that it sustained damages because the father knowingly misstated or omitted a material fact "with the intention of inducing [plaintiff's] reliance on the misstatement, which caused it to reasonably rely on the misrepresentation" (*Nigro v Lee*, 63 AD3d 1490, 1492 [2009] [internal quotation marks and citations omitted]; *see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]; *Young v Williams*, 47 AD3d 1084, 1086 [2008]). Promises of future performance, alone, are insufficient to sustain a claim of fraud (*see Moon v Clear Channel Communications*, 307 AD2d 628, 631 [2003]), and "[t]he mere fact that the expected performance was not realized is insufficient to demonstrate that [the promisor] falsely stated its intentions" (*Edelman v Buchanan*, 234 AD2d 675, 676 [1996] [internal quotation marks and citation omitted]; *see Sears v First Pioneer Farm Credit, ACA*, 46 AD3d 1282, 1285 [2007]). The father asserted by affidavit that plaintiff knew Homestead was in financial distress when he requested additional credit, that he made the request as part of a good faith effort to cure Homestead's default, and that he never intended to fail to repay the corporation's creditors. Plaintiff provided no evidence controverting these claims or otherwise demonstrating that the father's promise was "made with a present, albeit undisclosed, intent not to perform" (*Moon v Clear Channel Communications*, 307 AD2d at 631 [internal quotation marks and citations omitted]), and Supreme Court thus correctly granted summary judgment dismissing this claim.

With regard to the fraudulent conveyance claims, plaintiff asserts that at some time before the son left Homestead in December 1998, he converted several hundred thousand dollars of corporate funds to his own use, and that as a result, Homestead forced him out of his role as the corporation's treasurer and commenced two lawsuits against him.[3] The constructive fraud claims, asserted pursuant to Debtor and Creditor Law §§ 273, 274 and 275, are governed by a six-year limitations period, commencing on the date of the allegedly fraudulent transfer, without regard to the date of plaintiff's discovery of the transfer (*see* CPLR 213 [1]; *Citicorp Trust Bank, FSB v Makkas*, 67 AD3d 950, 952-953 [2009]; *Ehrler v Cataffo*, 42

---

3. The first lawsuit was commenced in St. Lawrence County in 1998, and was not pursued to completion. The second, commenced in Onondaga County in 2002, was settled in 2004 for $40,000.

AD3d 424, 425 [2007]; *Metzger v Yuenger Woodworking Corp.*, 33 AD3d 678, 679 [2006]), and so were also properly limited to conduct occurring after August 25, 1998.

As to the merits of the constructive fraud claims, defendant asserts that there was no evidence that the son conveyed any property of Homestead's to himself between August 26, 1998 and the termination of his corporate role in December 1998, and plaintiff offered nothing to refute this claim. Moreover, plaintiff did not respond to defendants' motion for summary judgment with evidence that any alleged conveyance during that time frame rendered the son insolvent (*see* Debtor and Creditor Law § 273), left Homestead with unreasonably small capital (*see* Debtor and Creditor Law § 274), or was done with the intent or belief that he would incur debts beyond his ability to repay (*see* Debtor and Creditor Law § 275). Thus, Supreme Court properly dismissed these claims (*see Matter of Shelly v Doe*, 249 AD2d 756, 757-758 [1998]).

Plaintiff's claim pursuant to Debtor and Creditor Law § 276 is subject to a different limitations period; this claim must be commenced within six years from the date of the transfer or two years from the date when the fraud was or should have been discovered, whichever is longer (*see* CPLR 203 [g]; 213 [8]; *Citicorp Trust Bank, FSB v Makkas*, 67 AD3d at 953-954; *Ehrler v Cataffo*, 42 AD3d at 425). Plaintiff asserts that it did not learn of the alleged transfers by the son or of Homestead's litigation against him until well after plaintiff's action was commenced, and defendants furnished no evidence to the contrary.[4] The September 2001 e-mail from Homestead's business consultant did not mention any potentially fraudulent transfers, nor did it specifically refer to any conduct on the part of the son or to litigation by Homestead against him. Thus, there are issues of fact as to when plaintiff learned or, in the exercise of reasonable diligence, should have learned of the alleged fraud, and plaintiff's claim under Debtor and Creditor Law § 276 should not have been limited to conduct occurring after August 25, 1998 (*see* CPLR 203 [g]; *Citicorp Trust Bank FSB v Makkas*, 67 AD3d at 953-954; *Ehrler v Cataffo*, 42 AD3d at 425; *Miller v Polow*, 14 AD3d 368, 368 [2005]).

---

**4.** Plaintiff asserts that it did not learn of these actions until sometime between 2005 and 2009, in part because defendants failed to provide corporate records and otherwise respond fully to its discovery demands. Homestead's lawsuits against the son were matters of public record, but "[t]he failure to ascertain that an allegedly fraudulent conveyance has occurred through the inspection of public records is not a basis for imputing knowledge of the fraud in the absence of circumstances that would require the plaintiff to investigate" (*Citicorp Trust Bank, FSB v Makkas*, 67 AD3d at 953).

As to the merits of this claim, a creditor asserting a claim under Debtor and Creditor Law § 276 may rely on badges of fraud to establish intent (*see Matter of Shelly v Doe*, 249 AD2d at 758). Badges of fraud may include "(1) a close relationship between the parties to the transaction, (2) a secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, . . . and ([4]) retention of control of the property by the transferor after the conveyance" (*id.*). Upon the record presented, triable issues of fact as to such indicia of fraud are presented.

Plaintiff next contends that Supreme Court erred in ruling that it could not pierce the corporate veil. On appeal, plaintiff confines this argument to the father, contending that he exercised such domination and control over Homestead that he should be held personally liable to plaintiff on its claim for an account stated.[5] We agree with the court that the record contains no evidence that the father "use[d] the corporation as a mere device to further [his] personal rather than the corporate business" or otherwise fully dominated Homestead's activities (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141 [1993]; *see Matter of Island Seafood Co. v Golub Corp.*, 303 AD2d 892, 895 [2003]). Further, as previously discussed, no showing was made that the father personally committed fraud. This finding also compels the determination that it was not shown that he used his alleged domination of Homestead "to commit a fraud or wrong against . . . plaintiff which resulted in plaintiff's injury" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d at 141; *see Heim v Tri-Lakes Ford Mercury, Inc.*, 25 AD3d 901, 902 [2006], *lv dismissed and denied* 6 NY3d 886 [2006]; *State of New York v Robin Operating Corp.*, 3 AD3d 769, 770-771 [2004]).

The claim for punitive damages was properly dismissed. Such damages are recoverable when a defendant's conduct " 'evince[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations' " (*Ross v Louise Wise Servs., Inc.*, 8 NY3d 478, 489 [2007], quoting *Walker v Sheldon*, 10 NY2d 401, 405 [1961]). The conduct alleged in plaintiff's surviving claim pursuant to Debtor and Creditor Law § 276 occurred years before the son

---

5. Plaintiff asserts that in May 2005, Supreme Court ruled that Homestead was liable to plaintiff on the account stated claim, but deferred decision on the amount due until trial. This determination was allegedly made in open court, but no transcription has been produced, nor does the record reveal any such written order, nor any evidence that plaintiff requested a determination of damages.

could have known of any potential obligation to plaintiff and before most of the unpaid obligation was incurred, and thus cannot support this claim (see *Gizzi v Hall*, 300 AD2d 879, 882 [2002]).

Finally, Supreme Court did not abuse its discretion in refusing to adjourn defendants' summary judgment motion until after plaintiff deposed the son. Plaintiff had over six years to conduct discovery between the commencement of the action and the November 2010 determination and did not demonstrate that "further discovery might reveal material facts in the exclusive knowledge of the movant or a codefendant" (*Bevens v Tarrant Mfg. Co., Inc.*, 48 AD3d 939, 942 [2008]; *see Stubbs v Ellis Hosp.*, 68 AD3d 1617, 1618-1619 [2009]). We note that plaintiff did conduct the deposition prior to the final order and judgment; the court considered the testimony and determined that it did not merit allowing time for additional discovery.

Mercure, J.P., Rose, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order and judgment is modified, on the law, without costs, by reversing so much thereof as granted defendants' cross motion for summary judgment dismissing the Debtor and Creditor Law § 276 cause of action against defendant Robert Squires Jr.; motion denied to that extent; and, as so modified, affirmed.