*675 OPINION OF THE COURT
Michael D. Stallman, J.
In this action, plaintiff, who states that she is legally blind, alleges that, on July 19, 2012, she was a passenger on an M7 Express bus that stopped short at or near 23rd Street in Manhattan.
Plaintiff now moves for a default judgment against defendant MTA Bus Company; defendant MTA Bus Company cross-moves for an order granting, nunc pro tunc, an extension of time to answer the complaint and for an order dismissing the action as against it on the ground that plaintiffs claims against defendant MTA Bus Company are time-barred (motion sequence No. 001). In essence, each side argues that it is entitled to prevail because the other missed a deadline.
The City of New York moves for summary judgment dismissing the action as against it, on the ground that it does not own the M7 Express bus at issue (motion sequence No. 002).
Lastly, defendants New York City Transit Authority (NYCTA), Manhattan and Bronx Surface Transit Operating Authority (MABSTOA), and the Metropolitan Transportation Authority (MTA) (collectively, the Authorities) move for dismissal and for summary judgment dismissing the complaint as against them (motion sequence No. 003). Like the City, they too assert that they do not own the “M7 Express bus” at issue, and they also contend that the notice of claim is inadequate, because it did not provide the cross street where the bus allegedly stopped short.
This decision addresses all three motions.
L
According to a Notice of Intention to Make Claim addressed to defendant MTA Bus Company at 128-15 28th Avenue, Flushing, New York 11354, plaintiff gave notice of an intention to make a claim against “said carrier” for damages that she sustained, attributable to an accident that occurred on “7/19/2012 11:49 a.m.” “At or near 23rd Street, City of New York, State of New York.” (Granata affirmation, exhibit A.) Defendant MTA Bus Company does not dispute that it received this notice of claim. (Granata affirmation ¶ 6.)
Another notice of claim dated October 11, 2012 was addressed to the Comptroller of the City of New York, MABSTOA, the MTA Bus Company, and the NYCTA. This notice of claim, which plaintiff apparently verified, states, in pertinent part:
*676 “The time when, the place where, and the manner in which the claim arose: The accident arose on July 19, 2012 at approximately 11:49 a.m. at or near 23rd Street New York, New York. Claimant Rosalind Williams was a passenger on a bus at or near 23rd Street New York, New York when the bus owned by Respondents and operated by their agent, servant and/or employee rear ended another automobile. . . . Upon information and belief, the motor vehicle owned by respondents is identified as an M7 Express bus bearing an unknown identification number, an unknown license plate number and operated by ‘JOHN DOE’, name fictitious and unknown.” (Minkina affirmation, exhibit A; Hanney affirmation, exhibit C.)
The City of New York does not dispute that this notice of claim was filed with the Comptroller on or about October 18, 2012. (Minkina affirmation ¶ 3.)
By a letter dated November 8, 2012 to plaintiffs counsel, the NYCTA wrote that plaintiffs notice of claim was being returned to plaintiff, because “the exact location (cross streets) was omitted.” (Hanney affirmation, exhibit E.) According to the NYCTA, plaintiff’s counsel was unable to provide the relevant cross streets, but informed the NYCTA that it was believed that plaintiff had boarded the subject M7 Express bus at or near plaintiffs home, i.e., at or near “Co-op City, Bronx, New York.” (Hanney affirmation ¶ 31.) The NYCTA did not schedule a statutory hearing, because it rejected plaintiffs notice of claim, and claimed that it had not received any amended notice of claim. (Hanney affirmation ¶ 33.)
Meanwhile, the MTA Bus Company initially requested plaintiff to appear for an oral examination by a letter dated April 30, 2013. (Palmer opp affirmation, exhibit C.) The letter, which contained the subject line “Re: Notice of Oral Examination” states, in pertinent part:
“By virtue of the power conferred on the MTA Bus Company by Sec. 1276 et. seq. of the Public Authorities Law, the above referenced claimant is hereby required to appear and be sworn to testify as to all facts relative to the above claim presented by you to the MTA Bus Company.
“You are scheduled to appear on:
“DATE: May 13, 2013
*677 “Location: 2 Broadway, 21st St, Room D21.101,
NY, NY
“Time: 10:00 a.m.” (Id.)
By letters dated May 13, 2013 and August 8, 2013, the MTA Bus Company rescheduled plaintiffs oral examination. (Palmer opp affirmation, exhibits E, H.) By a letter dated August 9, 2013, the MTA Bus Company canceled the examination. (Palmer opp affirmation, exhibit I.)
It is undisputed that plaintiff commenced this action on September 3, 2013. The complaint, which plaintiffs attorney apparently verified, alleges that each named defendant was the owner, lessor, and lessee of “an express bus bearing an unknown license plate number.” (Verified complaint ¶¶ 16-30.) According to the complaint, “on July 19, 2012, the above-mentioned bus stopped short at the aforesaid public thoroughfare.” (Verified complaint ¶ 42.)
According to an affidavit of service, the pleadings were served on defendant MTA Bus Company on September 9, 2013 at 12:53 p.m., by delivery to a “John Doe” at “347 Madison Avenue, 9th Floor, Law Dept, New York, NY 10007.” (Palmer affirmation, exhibit B.) A date stamp on a copy of the summons reads,
“MTA BUS CO
“LI BUS
“LEGAL DEPT.
“RECEIVED
“2013 SEP - 9 P 12:53” (Palmer opp affirmation, exhibit K).
According to plaintiffs attorney, more than 30 days have passed since service was purportedly made. (Palmer affirmation ¶ 4.)
Defendant MTA Bus Company denies that it was properly served. It also claims that its counsel, Armienti, DeBellis, Guglielmo, & Rhoden, LLP, has since served an answer upon plaintiff, and that plaintiff has not rejected its answer (Granata affirmation ¶ 43).
Plaintiffs counsel claims that, by a letter dated October 21, 2013, plaintiff rejected the answer of the MTA Bus Company. However, the October 21, 2013 letter was addressed to MTA Bus Company’s counsel at “44 Wall Street, New York, New York 10005-2401” (Palmer opp affirmation, exhibit L), whereas the answer, the cover letter accompanying the answer, and discovery *678 demands all apparently indicated that MTA Bus Company’s counsel was located at “39 Broadway, Suite 520, New York, New York, 10006-3034.” (Granata affirmation, exhibit D; Palmer opp affirmation, exhibit L.)
IL
The court will first address MTA Bus Company’s cross motion, because MTA Bus Company seeks permission to submit a late answer pursuant to CPLR 3012 (d). If permission is granted, then plaintiff’s motion for a default judgment against it is rendered academic.
A.
To extend the time to answer the complaint and to compel the plaintiff to accept an untimely answer as timely, a defendant must show a “reasonable excuse for delay or default.” (CPLR 3012 [d].) The defendant is not required to set forth a meritorious defense if no default judgment has been entered. (Hirsch v New York City Dept. of Educ., 105 AD3d 522 [1st Dept 2013].)
Here, MTA Bus Company has established that plaintiff accepted the late answer of the MTA Bus Company, and plaintiff thereby waived the default. (Pena-Vazquez v Beharry, 82 AD3d 649 [1st Dept 2011].) The October 21, 2013 letter from plaintiffs counsel did not constitute a timely rejection of the MTA Bus Company’s answer, because it was not sent to counsel’s address, which was clearly indicated in all the materials that were served upon plaintiffs counsel.
In any event, the MTA Bus Company offered a reasonable excuse for its delay in answering the complaint. Mario Polese, an agency attorney for MTA Bus Company, asserts that MTA Bus Company maintains its offices at 2 Broadway, New York, New York 10004, and that “[s]ervice on the MTA Bus Company can only be accepted at the 2 Broadway location.” (Granata affirmation, exhibit E [Polese affl ¶¶ 3-4.) It claims that “MTA Bus Company” and “MTA Bus Company Long Island Bus” are two separate and distinct legal entities, and that, based on the stamp, the pleadings were received by the Long Island Bus Company’s legal department, not MTA Bus Company’s legal department. (Granata reply affirmation ¶¶ 25-26.) Plaintiff has not demonstrated any prejudice that would result from the court permitting service of a late answer.
Therefore, the branch of the MTA Bus Company’s motion for an extension of time to answer the complaint is granted, and *679 the answer annexed as exhibit D to the cross motion (NYSCEF Doc No. 25) is deemed timely served. Given that the court has granted the MTA Bus Company permission to serve a late answer, plaintiffs motion for a default judgment against MTA Bus Company is denied.
Even if the court had not granted the MTA Bus Company leave to serve a late answer, plaintiffs motion for a default judgment against MTA Bus Company would still be denied. As discussed above, the MTA Bus Company disputed that it was properly served with the pleadings. Moreover, “[s]ome proof of liability is also required to satisfy the court as to the prima facie validity of the uncontested cause of action. The standard of proof is not stringent, amounting only to some firsthand confirmation of the facts.” (Joosten v Gale, 129 AD2d 531, 535 [1st Dept 1987] [citation omitted]; Feffer v Malpeso, 210 AD2d 60 [1st Dept 1994].) Here, plaintiff did not submit an affidavit of merit as to confirm the allegations that the MTA Bus Company was the owner of the “M7 Express bus,” and plaintiff presented differing accounts of the incident. The notice of claim (verified by plaintiff) states that the bus rear-ended another vehicle, whereas the complaint (verified by plaintiffs attorney) alleges that the bus “stopped short.” (Verified complaint ¶ 42.)
B.
Turning to the other branch of the MTA Bus Company’s motion, which seeks to dismiss the action as against it as time-barred, the court notes that this branch of the motion would not be entertained had the court not permitted MTA Bus Company’s late answer. “CPLR 3211 (e) requires that a motion to dismiss a cause of action under CPLR 3211(a) be made before service of the responsive pleading ‘is required.’ ” (David D. Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:52.)
“On a motion to dismiss a cause of action pursuant to CPLR 3211 (a) (5) on the ground that it is barred by the statute of limitations, a defendant bears the initial burden of establishing, prima facie, that the time in which to sue has expired. In considering the motion, a court must take the allegations in the complaint as true and resolve all inferences in favor of the plaintiff.” (Island ADC, Inc. v Baldassano Architectural Group, P.C., 49 AD3d 815, 816 [2d Dept 2008] [citations omitted]; Matter of Baird, 58 AD3d 958, 959 [3d Dept 2009]; see Brignoli v Balch, Hardy & Scheinman, 178 AD2d 290, 290 [1st Dept *680 1991] [“The defendant bears the burden of proof on an affirmative defense”].)
As a subsidiary of the Metropolitan Transportation Authority, the MTA Bus Company is subject to the statute of limitations applicable to the Metropolitan Transportation Authority. (Public Authorities Law § 1276 [6].) However, Public Authorities Law § 1276 (1) requires that the complaint “contain an allegation that at least thirty days have elapsed since the demand, claim or claims upon which such action is founded were presented to a member of the authority.” Thus, “it has been held that the effect of such a statute is to extend the general period of limitation by an additional 30 days.” (Barchet v New York City Tr. Auth., 20 NY2d 1, 5 [1967]; see Serravillo v New York City Tr. Auth., 42 NY2d 918 [1977] [statute of limitations tolled for duration of 30-day extension]; Burgess v Long Is. R.R. Auth., 79 NY2d 777, 778 [1991] [“This ‘stay’ of 30 days is not counted as part of the limitations period”].)
Therefore, the MTA Bus Company acknowledges that, for the purposes of determining whether an action founded on tort (except an action for wrongful death) against the MTA Bus Company is time-barred, 30 days must be added to the statute of limitations.
On July 19, 2012, the date of the alleged incident, Public Authorities Law § 1276 (2) provided that “[a]n action against the [Metropolitan Transportation Authority] founded on tort, except an action for wrongful death, shall not be commenced more than one year after the cause of action therefor shall have accrued.” However, prior to the commencement of this action, the legislature amended Public Authorities Law § 1276 (2) to provide for a statute of limitations of one year and 90 days. (L 2012, ch 500, § 27.)
The amendment of Public Authorities Law § 1276 (2) raises the issue of which limitations period is applicable here. It is undisputed that plaintiff commenced this action on September 3, 2013. One year and 30 days from July 19, 2012 fell on Sunday, August 18, 2013; one year and 120 days from July 19, 2012 fell on Saturday, November 16, 2013.[1] If the limitations period applicable here is one year and 120 days (which includes the Barchet toll of an additional 30 days), then the action would be timely commenced as to the MTA Bus Company.
*681 L
The issue presented is whether the legislature intended that the amendment to Public Authorities Law § 1276 (2) should apply to claims which accrued prior to, but were not commenced until after, the effective date of the amendment.
“The key in determining the temporal reach of a statute is in ascertaining the legislative intent. While interpretation must begin with an examination of the language itself, where a statute does not expressly address the issue, the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal.” (Brothers v Florence, 95 NY2d 290, 298-299 [2000] [citations and internal quotation marks omitted].)
In Brothers, the Court of Appeals addressed whether an amendment to CPLR 214 (6) to shorten the limitations period in nonmedical malpractice actions to three years “regardless of whether the underlying theory is based in contract or tort” was intended to bar claims that accrued prior to, but were not commenced until after, the effective date of the amendment.
The Court of Appeals stated that the legislature failed to indicate expressly whether the amendment was to apply to prior accrued claims. However, the Court ruled that the amendment was intended to apply to claims that accrued before the effective date, and “in that sense, have retroactive effect.” (Brothers, 95 NY2d at 299.) The Court reasoned that the law stated it was to “take effect immediately” (L 1996, ch 623, § 2); that the purpose of the new legislation was to clarify the legislature’s original intention; that the legislative history manifested a determination that the current limitations period was unduly prolonged; and that the amendment was remedial in nature.
Here, the Uniform Notice of Claim Act (L 2012, ch 500, as amended by L 2013, ch 24) permits notices of claim that are required as a condition precedent to suit to be served upon the New York Secretary of State. The Uniform Notice of Claim Act also establishes a uniform statute of limitations of one year and 90 days against such public entities (see e.g. CPLR 217-a), and the act amended the statute of limitations in Public Authorities Law § 1276 (2).
The Governor’s memorandum approving the bill states that the law
“w[ill] bring greater uniformity to the process of filing notices of claim and permit claimants to serve a *682 notice of claim upon public entities which are entitled to such notice, for example, municipalities, public authorities, and public benefit corporations, by serving the notice of claim on the Secretary of State as an agent for the entities.” (Governor’s Approval Mem, Bill Jacket, L 2012, ch 500, 2012 McKinney’s Session Laws of NY at 1460.)
The legislative memorandum relating to the Uniform Notice of Claim Act (L 2012, ch 500, as amended by L 2013, ch 24) states, in relevant part:
“The current statutes governing the filing of notices of claim and commencing an action or proceeding against a public corporation have become confusing and unfairly difficult for all concerned, including the judiciary and the governmental entities involved. . . . These various requirements in law have resulted in a multiplicity of sometimes disparate and confusing procedural rules and time limits. . . . This existing patchwork of statutes governing claims against government are neither consistent with one another, nor are they all catalogued or contained in the same, similar or readily locatable sections of the chaptered laws. The result is that even the most diligent, conscientious and able potential claimant can be misled in good faith by the lack of a uniform procedure for filing notices of claim and bringing actions against governmental and quasi-governmental entities.
“In addition, costly, time-consuming and resource-wasting litigation often ensues over arcane issues of notice of claim service and other procedural quirks, unnecessarily burdening the courts as well as the agencies involved, while at the same time undermining public confidence in the reasonableness and rationality of New York’s laws. This bill will provide a uniform, fair and easily engaged method of notice of claim service via the secretary of state in addition to those methods of service already existing, and thus provide a degree of uniformity to procedural rules governing actions against governmental and quasi-governmental entities.
“This bill is not intended to limit, alter, eliminate or otherwise nullify existing provisions of law relating to the service of a notice of claim, but only as a means of providing an alternative method for *683 satisfying the condition precedent to the commencement of an action or proceeding against a public corporation.” (Senate Introducer Mem in Support, Bill Jacket, L 2012, ch 500, 2012 McKinney’s Session Laws of NY at 1968.)
Section 79 of the Uniform Notice of Claim Act states, in pertinent part, “This act shall take effect on the one hundred eightieth day [June 15, 2013] after it shall have become a law and shall apply to all actions and proceedings accruing on or after such date.” (L 2012, ch 500, § 79, as amended by L 2013, ch 24 [emphasis supplied].) Based on the quoted language, this court finds that the legislature expressly indicated that the amendment was not intended to apply to claims or causes of action that accrued prior to the effective date of the act.[2] This interpretation is reinforced by the fact that, unlike the amendment in Brothers, the act was not to take effect immediately, but 180 days after passage of the Uniform Notice of Claim Act.
Here, because plaintiffs causes of action accrued prior to the effective date of the act, the limitations period applicable to the MTA Bus Company in this case is, as discussed above, one year and 30 days. The MTA Bus Company has therefore met its initial burden of demonstrating that plaintiff’s tort claim against it is time-barred.
2.
Plaintiff argues that the statute of limitations set forth in the former version of Public Authorities Law § 1276 was tolled by Executive Order (Cuomo) No. 52 (9 NYCRR 8.52), issued on October 31, 2012, which states, in pertinent part:
“I hereby temporarily suspend, for the period from the date of this Executive Order until further notice, the following laws:
“Section 201 of the Civil Practice Law and Rules, so far as it bars actions whose limitation period concludes during the period commencing from the date that the disaster emergency was declared pursuant to Executive Order Number 47, issued on October 26, 2012, until further notice, and so far as it limits a court’s authority to extend such time, whether or not the time to commence such an action is specified in Article 2 of the Civil Practice *684 Law and Rules.” (Emphasis added.)
Executive Order No. 52 was among a series of executive orders that Governor Cuomo issued in connection with Hurricane Sandy. By its terms, Executive Order No. 52 suspended CPLR 201 until “further notice.” Such further notice came in Executive Order (Cuomo) No. 81 (9 NYCRR 8.81) issued on November 20, 2012, which states, in pertinent part, “The suspension of provisions of law ordered by Executive Order Number 52 shall continue through December 25, 2012, except that the provision suspending Sections 30.10 and 30.30 of the Criminal Procedure Law shall not be continued.” Thus, Governor Cuomo suspended CPLR 201 from October 26, 2012 through December 25, 2012. (Matter of Parietti v Sampson, 117 AD3d 830 [2d Dept 2014].)
Plaintiffs attorney states that the law office suffered significant damage from Hurricane Sandy, which required a massive reconstruction project. (Palmer affirmation ¶ 29.) According to plaintiffs attorney, the office had its grand opening on June 24, 2013. (Id.) Plaintiffs attorney argues that the purpose of Executive Order No. 52 “was to help businesses and people get back on their feet.” (Id. ¶ 29.)
However, Executive Order No. 52 may not be read as enacting a “blanket toll,” in the sense that it suspended the running of all limitations periods. Executive Order No. 52 suspended CPLR 201 as to all actions, but only “so far as it bars actions whose limitation period concludes during the period commencing from the date that the disaster emergency was declared pursuant to Executive Order Number 47, issued on October 26, 2012, until further notice.” That is, the toll applied only to those actions whose limitation period ended during the period from October 26, 2012 (when the disaster emergency was declared) through December 25, 2012 (as set forth in Executive Order No. 81).
Here, the limitations period in this action did not expire within the period from October 26, 2012 through December 25, 2012. Thus, by its terms, Executive Order No. 52 does not apply to this action.
Scheja v Sosa (4 AD3d 410 [2d Dept 2004]) supports the conclusion that Executive Order No. 52 did not operate as a “blanket toll.” In Scheja, the Appellate Division, Second Department addressed the tolling provisions of Executive Order (Pataki) Nos. 113 and 113.7 (9 NYCRR 5.113), which declared a disaster in the wake of the terrorist attacks of September 11, 2011. Executive Order No. 113.7 suspended CPLR 201 “so far *685 as it bars actions whose limitation period concludes during the period commencing from the date that the disaster emergency was declared pursuant to Executive Order Number 113, issued on September 11, 2001, until further notice.”
The Appellate Division, Second Department rejected the plaintiffs contention that he should receive the benefit of the tolling provisions. The Appellate Division, Second Department reasoned,
“The plain meaning of these Executive Orders is that any litigant who was affected by the World Trade Center attacks and whose statute of limitations period expired between September 11, 2001 and November 8, 2001, was given a grace period of up until November 8, 2001, to satisfy the statute (see Randolph v CIBC World Mkts., 219 F Supp 2d 399, 401 [2002]). The plaintiff urges an extraordinary interpretation of the Governor’s Executive Orders as a tolling provision. According to his argument, any litigant who was affected by the disaster emergency could have their period of limitations tolled for the number of days from September 11, 2001, to November 8, 2001, no matter when the statute of limitations expired. This could not have been the intent of the Governor’s Executive Orders. The state of emergency caused by the attacks on September 11, 2001, no longer existed at the time the plaintiff was required to commence his action in February 2002 and thus could not have interfered with his ability to meet the statute of limitations. Accordingly, the action should have been dismissed as time-barred insofar as asserted against the NYCTA.” (Id. at 411-412 [emphasis added].)
Here, the wording of Executive Order No. 52 is similar to that of Executive Order No. 113.7, as it pertains to the suspension of CPLR 201. Therefore, Executive Order No. 52 should be construed similarly to Executive Order No. 113.7 as to the suspension of CPLR 201. Like the plaintiff in Scheja, the declared state of emergency no longer existed at the time that plaintiff in this case could have commenced this action, which was by August 19, 2013 at the latest. Thus, this court rejects plaintiffs argument of a “blanket toll,” i.e., that the period of limitations for every litigant who was affected by the disaster emergency was tolled for 60 days (the number of days from Oct. 26, 2012 through Dec. 25, 2012), irrespective of when the statute of limitations expired.
*686 3.
Plaintiff argues that the doctrine of equitable estoppel applies, because “the initial 50-h hearing scheduled for May 13, 2013 was adjourned at Plaintiff’s request” and “Defendant MTA BUS COMPANY . . . began to systematically adjourn and postpone the 50-h hearing until they were able to allege that the time period in which to commence suit had expired due to the statute of limitations.” (Palmer opp affirmation ¶¶ 50-51.)
“The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense . . .
“Thus, this Court has held that equitable estoppel will apply ‘where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.’ Moreover, the plaintiff must demonstrate reasonable reliance on the defendant’s misrepresentations.” (Zumpano v Quinn, 6 NY3d 666, 673-674 [2006] [citation omitted].)
As plaintiff indicates, the MTA Bus Company initially requested plaintiff to appear for an oral examination by a letter dated April 30, 2013. (Palmer opp affirmation, exhibit C.) By a letter dated August 9, 2013, the MTA Bus Company canceled the examination and gave no future date. (Palmer opp affirmation, exhibit I.) Plaintiff was under the impression that the examination requested by the MTA Bus Company was a 50-h hearing, because, in the letters that plaintiff’s counsel sent to plaintiff to inform her of the examination, and of the subsequent rescheduling, plaintiff’s counsel consistently referred to the MTA Bus Company’s examination as a “50-h hearing.” (Palmer opp affirmation, exhibits D, F.)
However, compliance with a demand for an examination before the MTA Bus Company is not a condition precedent to suit, unlike a hearing demanded pursuant to General Municipal Law § 50-h.
Public Authorities Law § 1276 (4) states,
“The [Metropolitan Transportation] authority may require any person, presenting for settlement an account or claim for any cause whatever against the authority, to be sworn before a member, counsel or an attorney, officer or employee of the authority designated for such purpose, concerning such account or claim and when so sworn to answer orally as to any facts relative to such account or claim.”
*687 This section is applicable to the MTA Bus Company, which is a subsidiary of the Metropolitan Transportation Authority. (Public Authorities Law § 1276 [6].) The language of Public Authorities Law § 1276 (4) is identical to Public Authorities Law § 1212 (5).
In Hernandez v New York City Tr. Auth. (41 Misc 2d 123 [Sup Ct, NY County 1963], affd 20 AD2d 968 [1st Dept 1964]), the court ruled that compliance with a demand for a hearing before the New York City Transit Authority pursuant to Public Authorities Law § 1212 (5) is not a condition precedent to suit. The court reasoned,
“There is no prohibition in that section to the commencement of an action until compliance with the demand for examination as provided in section 50-h of the General Municipal Law.
“Nor can it be held that section 1212 of the Public Authorities Law must be read in the light of the provisions of section 50-h of the General Municipal Law. Section 1212, insofar as it refers to the General Municipal Law, does so only with respect to section 50-e and the serving of notice.” (Id. at 124.)
Citing Hernandez, the Appellate Division, First Department has ruled “there is no prohibition in the Public Authorities Law to the commencement of an action until compliance with a demand for an examination” before the NYCTA and MABSTOA. (Cespedes v City of New York, 301 AD2d 404, 404 [1st Dept 2003].)[3]
Because the language of Public Authorities Law § 1276 (4) is identical to Public Authorities Law § 1212 (5), compliance with a demand for an examination before the MTA Bus Company is not a condition precedent to suit. Thus, equitable estoppel does not lie because the MTA Bus Company’s adjournments of the examination did not prevent plaintiff from commencing an action against it before the statute of limitations expired. Neither did the letters from the MTA Bus Company mislead plaintiff into believing that the examination was a 50-h hearing, because the letters themselves did not refer to the examination as a 50-h hearing, and indicated that the oral examination was pursuant to “Sec. 1276 et seq. of the Public Authorities Law.” (Palmer opp affirmation, exhibit L.)
*688 Therefore, the branch of MTA Bus Company’s motion to dismiss the action as against it as time-barred is granted, and the complaint is severed and dismissed as against it. The action continues as to MTA Bus Company only with respect to the City’s cross claim against it for contribution, which accordingly must be converted to a third-party claim.
III.
The City moves for summary judgment on the ground that it does not own the “M7 Express bus” at issue. The City contends that the bus is part of the “Metropolitan Transit [sic] Authority Bus Company (hereinafter MTA Bus Company)” which is a legal entity separate and distinct from the City. (Minkina affirmation ¶ 2.) The City submits an affidavit from Tajinder Jassal, the Director of the Bus Stop Management Unit of the City’s Department of Transportation. Jassal states, “As part of my administrative duties, I am responsible for all administrative, planning and field operations, I manage the unit’s Bus Permit System, contracts, budget, correspondences, and I attend meetings.” According to Jassal,
“Based upon my position with the DOT in conjunction with my knowledge and experience working as the Director of the Bus Stop Management Unit, the M7 Bus Line is part of the Metropolitan Transit [sic] Authority Bus Company and was not owned, maintained or operated by the City of New York on July 19, 2012.” (Jassal aff ¶ 2.)
The City’s motion is denied. The City has not demonstrated, as a matter of law, that the City did not own the “M7 Express bus” at issue. First, the court takes judicial notice of the records of the Secretary of State, which indicate that there is no public corporation named the “Metropolitan Transit Authority Bus Company,” but there is a corporation named “MTA Bus Company’’ (http://www.dos.ny.gov/corps/bus_entity_search.html [accessed June 20, 2014]). Given that Jassal’s affidavit states that the “M7 Bus Line” was part of the “Metropolitan Transit Authority Bus Company” — a corporation that does not exist— the City has not met its burden of summary judgment.
To the extent that the City meant to assert that the M7 bus line belonged to the MTA Bus Company, the MTA Bus Company appears to have denied ownership of the bus at issue. The MTA Bus Company denied the allegation of paragraph 16 of the complaint, which alleges that “defendant MTA Bus owned an *689 express bus bearing an unknown license plate number.” (Granata affirmation, exhibit D.) On this record, the MTA Bus Company’s ownership of the subject “M7 Express bus” is a disputed issue of fact.
IV
Like the City, the Authorities argue that they do not own the “M7 Express bus” at issue. The Authorities contend that the New York City Transit Authority and the Manhattan and Bronx Surface Transit Operating Authority “do not own, operate, manage, maintain or control an Express bus on the M7 bus route in Manhattan.” (Hanney affirmation ¶ 13.) The Authorities argue that the Metropolitan Transportation Authority does not own buses (citing Cusick v Lutheran Med. Ctr., 105 AD2d 681 [2d Dept 1984]). The Authorities also argue that the notice of claim lacks sufficient detail.
A.
Summary judgment is granted to the Metropolitan Transportation Authority. “ ‘It is well settled, as a matter of law, that the functions of the MTA with respect to public transportation are limited to financing and planning, and do not include the operation, maintenance, and control of any facility.’ ” (Delacruz v Metropolitan Transp. Auth., 45 AD3d 482, 483 [1st Dept 2007], quoting Cusick v Lutheran Med. Ctr., 105 AD2d 681, 681 [2d Dept 1984]; Towbin v City of New York, 309 AD2d 505, 505 [1st Dept 2003] [“the action must be dismissed against defendant Metropolitan Transportation Authority for the additional reason that it neither owns nor operates any buses”].)
Summary judgment on the ground that the NYCTA and MABSTOA did not own the “M7 Express bus” at issue is denied as premature pursuant to CPLR 3212 (f). Depositions of the NYCTA and MABSTOA have not been held, and the court believes that their depositions may shed light on the bus at issue, its route designation and which entity owned it.
The Authorities apparently assert that express buses do not run on the M7 route, which they assert is a local route between West 14th Street at Sixth Avenue and West 147th Street at Adam Clayton Powell Boulevard. (Hanney affirmation, exhibit D [Wyss aff] ¶ 9.) The Authorities believe that plaintiff likely boarded the “M7 Express bus” in Co-op City in the Bronx, where plaintiff purportedly resides. (Hanney affirmation ¶ 31.) However, the Authorities assert that the M7 bus route operates *690 only in Manhattan, and does not serve the Bronx. (Wyss aff ¶ 9.)
The Authorities’ assertions raise the possibility that plaintiffs identification of the bus at issue as an “M7 Express bus” may very well be mistaken. Because the “M” designation appears to designate a local bus that travels exclusively in Manhattan, it appears unlikely that an express bus or a bus that might have traveled between the Co-op City in the Bronx and Manhattan would have borne a route number solely with an “M” designation, such as M15, M34, M103. Discovery concerning how the bus routes between Manhattan and Bronx are designated, and how express bus routes are designated, might reveal the correct identity of the bus route at issue, which may lead to which entity, if any, operates or owns the buses along that route. Plaintiff may be examined about where she boarded, and about the route of the subject bus on July 19, 2012, if she has not already been questioned on this subject.
Therefore, summary judgment on the ground that the Authorities did not own or operate the bus at issue is denied as premature.
B.
The Authorities also argue that the notice of claim is not adequately specific. Although the notice of claim states that “the accident arose ... at or near 23rd Street New York, New York” (Hanney affirmation, exhibit C), the Authorities contend that the notice of claim should have designated cross streets or intersections. As the Authorities indicate, over a dozen avenues intersect with 23rd Street in Manhattan.
As a threshold matter, plaintiff argues that the Authorities waived their right to assert that plaintiffs did not meet the notice of claim requirements because they did not assert it as an affirmative defense in their answer. This argument is without merit. The Authorities were under no obligation to plead, as an affirmative defense, plaintiffs failure to comply with the statutory notice of claim requirement. (See e.g. Barnaman v New York City Health & Hosps. Corp., 90 AD3d 588, 589 [2d Dept 2011]; Reaves v City of New York, 177 AD2d 437, 437 [1st Dept 1991] [“the failure to comply is not an affirmative defense to be asserted by defendants”].)
“General Municipal Law § 50-e (2) requires written notice, ‘sworn to by or on behalf of the claimant,’ which sets forth ‘the name and post-office address *691 of each claimant, and of his attorney, if any/ ‘the nature of the claim/ ‘the time when, the place where and the manner in which the claim arose’ and ‘the items of damage or injuries claimed to have been sustained so far as then practicable.’ As we have explained,
“ ‘[t]he test of the sufficiency of a Notice of Claim is merely whether it includes information sufficient to enable the city to investigate .... Thus, in determining compliance with the requirements of General Municipal Law § 50-e, courts should focus on the purpose served by a Notice of Claim: whether based on the claimant’s description municipal authorities can locate the place, fix the time and understand the nature of the [claim]’ (Brown v City of New York, 95 NY2d 389, 393 [2000] [internal quotation marks and citations omitted]).
“Put another way, the ‘plain purpose’ of statutes requiring prelitigation notice to municipalities ‘is to guard them against imposition by requiring notice of the circumstances . . . upon which a claim for damages is made, so that its authorities may be in a position to investigate the facts as to time and place, and decide whether the case is one for settlement or litigation.’ ” (Rosenbaum v City of New York, 8 NY3d 1, 10-11 [2006] [citation omitted].)
In determining whether the omission of the cross streets from the location stated in plaintiffs notice of claim renders the notice of claim insufficient, this court finds guidance in other cases involving mistakes in the location alleged in a notice of claim. (Davis v New York City Tr. Auth., 117 AD3d 586 [1st Dept 2014]; Dillon v Manhattan & Bronx Surface Tr. Operating Auth., 182 AD2d 553 [1 Dept 1992].)
In Davis, the plaintiff alleged in the initial notice of claim that the decedent was thrown out of her wheelchair because the bus driver was negligently driving at a high speed and had failed to properly secure decedent’s wheelchair to the interior of the bus. According to the initial notice of claim, the accident happened at or near 124th Street near Marcus Garvey Park. Plaintiff subsequently amended her notice of claim to allege that the accident occurred at 120th Street. At trial, the decedent’s husband testified that the accident happened at the intersection of 124th Street and “Mount Morris West,” a different intersection from that alleged in the amended notice of *692 claim. The jury returned a verdict in plaintiffs favor for $1.5 million.
The trial court granted defendant’s motion to set aside the verdict, reasoning,
“Here defendants were prejudiced by plaintiff’s change at trial in identifying the accident site because the change was not only one of location, but also one that concerned the etiology of the accident. At trial, plaintiff’s argument that the accident occurred at 124th Street — not at 120th Street, as set forth in the amended notice of claim— was accompanied by the assertion that the bus driver ignored stop signs and a red blinking light to make the left turn. This describes an even greater degree of negligence than taking a left turn at excessive speed when the traffic signal is green.” (Davis v New York City Tr. Auth., Sup Ct, NY County, Apr. 16, 2012, Moulton, J, index No. 105532/2007, slip op at 5.)
On appeal, the Appellate Division, First Department modified the trial court’s decision, denied the motion to dismiss and directed a new trial. On the issue of the change of address of the location at trial, the Appellate Division stated, “the change of location of the accident was not itself substantive.” (117 AD3d at 587.)
In Dillon, the plaintiffs notice of claim stated that she was injured while disembarking from defendant’s number 9 bus in Bronx County “in the vicinity of Eastchester Road directly opposite The Albert Einstein Medical Center” (182 AD2d at 553). The defendant asserted that its investigation was hampered by a description of the accident site too vague to be of use in locating any defect in the roadway, and also by the fact that the number 9 bus does not run along Eastchester Road. At the statutory hearing some four months after the accident, the correct bus route was identified. The Appellate Division, First Department ruled the lower court did not abuse its discretion to deem the notice of claim sufficient. The Appellate Division explained that “the inadvertent lack of specificity was not calculated to mislead or confuse, and that the notice was clarified in a manner that avoided prejudice to defendant.” (Dillon, 182 AD2d at 553.)
Here, like the plaintiff in Davis, the allegations of negligence appear to be based on operation of the bus, i.e., the *693 bus either stopped short or rear-ended another vehicle. Information about where on 23rd Street the incident occurred does not alter the allegations of negligent operation of the bus. The omission of an intersection in plaintiffs notice of claim here is similar to the erroneous intersection alleged in the amended notice of claim in Davis — the description of the location might have led the NYCTA to dispatch investigators to areas where the incident did not occur.
Like the plaintiff in Dillon, the notice of claim in this case alleges a bus route that does not run between Co-op City in the Bronx and Manhattan. Like the plaintiff in Dillon, the record does not indicate that the omission of the cross streets was “calculated to mislead or confuse.” Plaintiffs counsel states that plaintiff is legally blind.
Contrary to their argument, the Authorities did not demonstrate prejudice as a result of the omission. (Ciaravino v City of New York, 110 AD3d 511, 511-512 [1st Dept 2013] [defendant failed to meet its burden of showing prejudice, because the record does not indicate that it sent anyone to investigate the scene of the accident either before or after the correct location had become apparent]; Rodriguez v City of New York, 38 AD3d 268, 269 [1st Dept 2007] [“Prejudice is established where a municipal defendant is ‘able to show that it actually conducted a timely investigation at the wrong site due to the erroneous description’ ”].) The information provided in the notice of claim here allowed the Authorities to investigate as to whether any of them owned the “M7 Express bus” at issue. (See Hudson v New York City Tr. Auth., 19 AD3d 648 [2d Dept 2005] [defendants were not prejudiced by the plaintiff giving two possible bus numbers which, upon investigation by the defendants, belonged to buses owned and operated by the defendants on other routes]; see also Phillipps v New York City Tr. Auth., 68 AD3d 461, 462-463 [1st Dept 2009] [“the notice of claim was not insufficient due to plaintiffs inability to state whether the bus was an Ml, M2, M3 or M4 or to recall any identifying information regarding the bus driver”].)
Therefore, under the circumstances, the lack of a specific designation of the intersection or cross streets where this incident allegedly occurred does render the notice of claim deficient.
Conclusion
Accordingly, it is hereby ordered that plaintiffs motion for a default judgment (motion sequence No. 001) is denied; and it is *694 further ordered that the cross motion by defendant MTA Bus Company is granted, and the answer annexed to the cross motion (NYSCEF Doc No. 25) is deemed timely served, nunc pro tunc; and it is further ordered the complaint is severed and dismissed as against defendant MTA Bus Company, with costs and disbursements to said defendant as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of defendant MTA Bus Company accordingly; and it is further ordered that the City of New York’s cross claim against the MTA Bus Company is converted to a third-party claim; and it is further ordered that the motion for summary judgment by defendant City of New York (motion sequence No. 002) is denied; and it is further ordered that the motion to dismiss and for summary judgment by defendants New York City Transit Authority, Manhattan and Bronx Surface Transit Operating Authority, and the Metropolitan Transportation Authority (motion sequence No. 003) is granted in part as follows:
1. The complaint is severed and dismissed as against defendant Metropolitan Transportation Authority, with costs and disbursements to said defendant as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of defendant Metropolitan Transportation Authority; and
2. The cross claim of the City of New York against defendant Metropolitan Transportation Authority is dismissed, and the remainder of motion is denied; and it is further ordered that the remainder of the action shall continue.

. Under either scenario, General Construction Law § 25-a would extend plaintiffs time to commence an action to the next business day.

. The legislature did not provide that the act applied to actions and proceedings commenced on or after the act became effective.

. In sharp contrast to the Appellate Division, First Department, the Appellate Division, Second Department holds, “Compliance with Public Authorities Law § 1212 (5) is a condition precedent to the commencement of an action against the New York City Transit Authority.” (Vartanian v City of New York, 48 AD3d 673, 674 [2d Dept 2008].)