[Cite as *Seniah Corp. v. Buckingham, Doolittle & Burroughs, L.L.P.*, 2018-Ohio-855.]

## FIFTH DISTRICT COURT OF APPEALS
## STARK COUNTY, OHIO
## FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| SENIAH CORPORATION | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 2017CA00109 |
| | : | |
| BUcKINGHAM, DOOLITTLE & | : | |
| bURROUGHS, LLP, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No.
                             2015CV00785



JUDGMENT:                    AFFIRMED



DATE OF JUDGMENT ENTRY:      March 5, 2018



APPEARANCES:

For Plaintiff-Appellant:              For Defendants-Appellees:

BRADLEY J. BARMEN                     LEE PLAKAS
1375 E. 9th St., 16th Floor           DAVID L. DINGWELL
Cleveland, OH 44114                   MARIA C. KLUTINOTY EDWARDS
                                      220 Market Ave. S., 8th Floor
                                      Canton, OH 44702

*Delaney, P.J.*

{¶1}   Plaintiff-Appellant Seniah Corporation appeals the June 8, 2017 judgment entry of the Stark County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### Attorney-Client Relationship

{¶2}   Defendant-Appellee Patrick J. Keating is an attorney with Defendant-Appellee Buckingham, Doolittle & Burroughs. Plaintiff-Appellant Seniah Corporation retained Keating and Buckingham to represent it in two legal matters. In February 2010, Keating represented Seniah in a foreclosure action. Keating also represented Seniah in its Chapter 11 Petition in the U.S. Bankruptcy Court for the Northern District of Ohio, Eastern Division, Case No. 10-60620.

### Cognizable Events and Termination of Relationship

{¶3}   Seniah claimed Keating commit malpractice on two occasions during his representation of Seniah. On November 23, 2010, the Bankruptcy Court denied a motion to amend a Relief from Stay Order where Seniah requested an opportunity to file a plan of reorganization that would allow Seniah to protect the property subject to the foreclosure action. On August 15, 2011, the property subject to foreclosure was sold at Sheriff's Sale for allegedly a fraction of its lowest appraised value.

{¶4}   The foreclosure action concluded on September 16, 2011. The bankruptcy case closed on November 22, 2011. The attorney-client relationship between Keating and Seniah ended no later than November 22, 2011.

**Initiation of Legal Malpractice Claim**

{¶5} On July 24, 2012, Seniah contacted Keating by letter to advise him of Seniah's potential claim for legal malpractice. The letter asked Keating to arrange for Seniah's representative to take possession of the file and to schedule a time for a meeting to discuss the matter. Keating gave the letter to Susan Rodgers, general counsel for Buckingham.

{¶6} On August 6, 2012, Rodgers sent Seniah a letter identifying herself as general counsel for Buckingham and indicating she was in receipt of Seniah's July 24, 2012 letter. Rodgers stated that "we are investigating the matter and will be contacting [Seniah] shortly to discuss the firm's position." Rodgers did not state in the letter that she did not represent Keating.

{¶7} Rodgers, Keating, and Seniah met on September 21, 2012 to discuss Seniah's claim of legal malpractice. Rodgers did not state at the meeting that she represented only Buckingham's interests. The parties did not reach a settlement at the meeting.

{¶8} Seniah was concerned about the expiration of the statute of limitations on November 22, 2012. Rodgers drafted a Tolling Agreement to extend the statute of limitations. Keating was not involved in the drafting of the Tolling Agreement. The Tolling Agreement states as follows:

> This Tolling Agreement ("Tolling Agreement") is entered into effective
> October 3, 2012 between and among Buckingham, Doolittle & Burroughs,
> LLP ("BDB"), an Ohio limited liability partnership, and William K. Haines,
> Jr. ("Haines") and Seniah Corp. ("Corporation") * * *.

The Seniah Parties claim that certain legal services were not properly rendered by BDB in relation to the handling of the Seniah Corp. Bankruptcy Case * * * resulting in a potential malpractice claim ("Potential Claim"); and

BDB denies any basis for any Potential Claim and further denies that it performed services for Haines as a client in relation to the Potential Claim; and

BDB and the Seniah Parties desire to pursue a potential resolution of the Potential Claim, without prejudicing the Seniah Parties' right to bring claims against BDB due to the passage of time.

* * *

1. The parties are entering into this Agreement for the purpose of preserving the status quo as of October 3, 2012 with respect to any applicable statute(s) of limitations and other time-related defenses relating to or arising from any applicable law on which the Potential Claim is/or may be based.

2. The parties agree that as of October 3, 2012, the running of any statute(s) of limitations with respect to any and all possible causes of action and claims which the Seniah Parties may have against BDB with respect to the Potential Claim is tolled and suspended until this Agreement is terminated as set forth in Section 7.

* * *

7. * * * This Agreement will terminate the earlier of January 31, 2013 * * *.

8. This Agreement constitutes the entire agreement of the parties with respect to the tolling of any statute(s) of limitations, the equitable doctrine of laches, and the waiver of claims and defenses related to the passage of time with respect to the Potential Claim. No modifications or amendments to this Agreement are effective unless they are set forth in writing and signed by all of the parties. * * * This Agreement is binding upon and inures to the benefit of each party, as well as their heirs, successors, assigns, shareholders, members, officers, directors, agents, or insurers, as these terms are applicable. * * *.

9. Each party represents and warrants that the individuals whose signatures appear below is duly authorized to execute this Agreement on behalf of their respective party.

{¶9} The Tolling Agreement was signed by Seniah's counsel on behalf of William K. Haines, Jr. and Seniah Corp. Rodgers signed the Tolling Agreement as general counsel on behalf of Buckingham. Keating did not sign the Tolling Agreement.

{¶10} Seniah and Rodgers met again on October 15, 2012. Keating was not present at the meeting. Seniah and Rodgers did not reach a settlement.

{¶11} Seniah and Rodgers participated in a private mediation on January 11, 2013. Keating was not present at the mediation. The matter was not settled at mediation.

**Malpractice Complaint**

{¶12} On February 19, 2013, Seniah filed a complaint in the Stark County Court of Common Pleas naming Buckingham, Keating, and Joshua Berger, an attorney with

Buckingham, as Defendants. The complaint alleged Keating and Berger committed legal malpractice relating to their representation of Seniah during a foreclosure action and a Chapter 11 Bankruptcy proceeding. The complaint sought to hold Keating and Berger liable in their individual capacities.

{¶13} Buckingham filed an answer to the complaint.

{¶14} Keating and Berger filed a Motion to Dismiss on April 26, 2013. The motion to dismiss argued that pursuant to Civ.R. 12(B)(6), Seniah could prove no set of facts entitling it to relief because the applicable statute of limitations for a legal malpractice expired prior to the filing of the complaint. Keating and Berger noted Seniah filed its complaint for legal malpractice on February 19, 2013. They argued the complaint stated two cognizable events whereby Seniah could have discovered the legal malpractice. Those events, however, were beyond the one-year statute of limitations. Keating and Berger also argued Seniah could not rely upon the termination of the attorney-client relationship to determine the statute of limitations because the complaint failed to state any facts as to the attorney-client relationship termination.

{¶15} On May 13, 2013, Seniah filed a "Brief in Opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for Leave to Amend Complaint, Instanter." In support of its opposition to the motion to dismiss, Seniah argued the complaint was timely filed based on a Tolling Agreement entered into between Seniah and Buckingham, Doolittle & Burroughs, LLP on October 3, 2012. Seniah attached the Tolling Agreement to the May 13, 2013 motion as Exhibit A. Seniah also attached correspondence between the parties as exhibits to further support its opposition to the motion to dismiss.

{¶16} On June 4, 2013, the trial court issued its judgment entry granting the motion to dismiss. In its judgment entry, the trial court agreed with the argument of Keating and Berger that the complaint was filed outside of the one-year statute of limitations. The trial court referred to the factual allegations in the complaint to find Seniah could prove no set of facts warranting recovery. The trial court further found the Tolling Agreement did not serve to extend the statute of limitations for filing the legal malpractice complaint. The trial court found the Tolling Agreement was not signed by Keating or Berger and therefore was not binding upon those parties per the language of the Tolling Agreement.

{¶17} After the ruling, Buckingham, Doolittle & Burroughs, LLP filed a motion for judgment on the pleadings. Seniah filed a motion for relief from judgment.

{¶18} Seniah dismissed Berger as a party-defendant.

{¶19} On December 19, 2013, the trial court denied Seniah's motion for relief from judgment. The trial court also granted the motion for judgment on the pleadings filed by Buckingham, Doolittle & Burroughs, LLP via judgment entry on January 13, 2014.

{¶20} Seniah appealed the June 4, 2013 judgment entry of the Stark County Court of Common Pleas to this Court in *Seniah Corp. v. Buckingham, Doolittle & Burroughs, LLP*, 5th Dist. Stark No. 2014CA00013, 2014-Ohio-4370 ("*Seniah I*"). In its appeal, Seniah argued the trial court erred in granting the Civ.R. 12(B)(6) motion to dismiss. We agreed the trial court erred when it granted the motion to dismiss because the trial court considered evidence and materials outside the four corners of the complaint to reach its decision to grant the motion to dismiss. *Id.* at ¶ 18-19. We held

that in order to consider matters outside the complaint, the trial court should have converted the Civ.R. 12(B)(6) to a motion for summary judgment. *Id.* at ¶ 20. We reversed the trial court's June 4, 2013 judgment entry granting the motion to dismiss and remanded the matter for further proceedings. *Id.* at ¶ 25.

{¶21} Upon remand, Keating filed a motion for summary judgment on January 12, 2015. Seniah filed a notice of dismissal on January 30, 2015.

{¶22} On April 15, 2015, Seniah refiled its complaint naming Buckingham, Doolittle & Burroughs, LLP and Keating as defendants. Buckingham and Keating filed answers to the complaint.

{¶23} On August 10, 2015, Keating filed a motion for summary judgment. Keating's sole argument in the motion for summary judgment was that Seniah's claim for legal malpractice was time-barred by the statute of limitations. Pursuant to the trial court's pre-trial order, Seniah's response was due on September 7, 2015.

{¶24} Seniah did not file a response to the motion for summary judgment by September 7, 2015. On September 16, 2015, the trial court issued its judgment entry finding there were no genuine issues of material fact and Keating was entitled to judgment as a matter of law. The judgment entry did not dispose of all pending claims. Seniah's claims against Buckingham were still pending.

{¶25} Seniah filed a motion for relief from judgment arguing its failure to answer was due to mistake, inadvertence, and excusable neglect.

{¶26} On October 28, 2015, Buckingham filed a motion for summary judgment. Buckingham argued Seniah's claims against Buckingham were barred by res judicata

and the law of the case based on Seniah's failure to appeal the trial court's January 2014 judgment entry granting Buckingham's motion for judgment on the pleadings.

{¶27} The trial court denied Seniah's motion for relief from judgment on December 7, 2015. The trial court found Seniah failed to show a likelihood of success on the merits because it failed to identify an expert to support its claim for legal malpractice.

{¶28} The trial court granted Buckingham's motion for summary judgment on January 27, 2016.

{¶29} Seniah appealed the December 7, 2015 judgment entry in *Seniah Corp. v. Buckingham, Doolittle & Burroughs, LLP*, 5th Dist. Stark No. 2016CA00039, 2016-Ohio-7516 ("*Seniah II*"). Seniah argued the trial court erred by denying its motion for relief from judgment. In *Seniah II*, we held the September 16, 2015 judgment entry was not a final order, therefore Civ.R. 60(B) was not the proper procedural mechanism. *Id.* at ¶ 21. Seniah's motion should have been considered a motion for reconsideration. *Id.* We reviewed the motion and found the trial court abused its discretion when it denied the motion. Keating argued in his motion for summary judgment that Seniah's claim for legal malpractice was barred by the statute of limitations, but did not address the substantive merits of Seniah's claim. The trial court found Seniah was not entitled to reconsideration because Seniah could not present a meritorious claim or defense on the basis that Seniah did not identify an expert witness to support its claim for legal malpractice. We held only the issue of the statute of limitations was before the trial court, not the merits of the legal malpractice claim. *Id.* at ¶ 31. Accordingly, we reversed the judgment of the trial court and remanded the matter for further proceedings.

{¶30}  Upon remand, Keating filed his motion for summary judgment with the trial court on November 18, 2016. He renewed his argument that the statute of limitations on Seniah's claim had expired. Seniah responded to the motion and Keating replied.

{¶31} On June 8, 2017, the trial court granted Keating's motion for summary judgment. The trial court first determined the date Seniah's claim for legal malpractice accrued was not based on the termination of the attorney-client relationship, but on two cognizable events that occurred no later than October 2011. Seniah filed its original complaint against Keating on February 19, 2013. Pursuant to R.C. 2305.11(A), the trial court determined Seniah's claim for legal malpractice occurred outside of the one-year statute of limitations. The trial court next examined whether the Tolling Agreement worked to toll the statute of limitations as to its claims against Keating. The trial court determined Keating was not a party to the Tolling Agreement and did not sign it. The language of the Tolling Agreement stated it applied to the signatories only: William Haines, Seniah, and Buckingham. Finally, the deposition testimony of Rodgers and Keating demonstrated Keating never authorized Rodgers to sign the Tolling Agreement on his behalf and Rodgers did not have authority to bind members of Buckingham in their individual capacity.

{¶32} It is from this judgment Seniah now appeals.

**ASSIGNMENT OF ERROR**

{¶33} Seniah raises one Assignment of Error:

{¶34} "THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT."

**ANALYSIS**

{¶35} Seniah argues in its sole Assignment of Error that the trial court erred when it granted summary judgment in favor of Keating. We disagree.

**Summary Judgment Standard of Review**

{¶36} We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶37} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by

the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶38} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

### Legal Malpractice and the Statute of Limitations

{¶39} R.C. 2305.11 sets forth a one-year statute of limitations for legal malpractice claims. The one-year statutory period begins to run upon the termination of the attorney-client relationship or the discovery of the alleged malpractice, whichever occurs later. *Hicks v. Garrett*, 5th Dist. Stark No. 2011CA00109, 2012-Ohio-3560, ¶ 46 citing *Ladanyi v. Crookes & Hanson Ltd., et al.,* 8th Dist. No. 87888, 2007-Ohio-540. In *Zimmie v. Calfee, Halter & Griswold,* 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), the Ohio Supreme Court set forth the standard with respect to the statute of limitations for malpractice:

> Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue its possible remedies against the attorney, or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Id.* at 58, 538 N.E.2d 398. A cognizable event is defined as an event that is sufficient to "alert a reasonable person that in the course of legal representation his attorney committed an improper act." *Spencer v. McGill,* 87 Ohio App.3d 267, 278, 622 N.E.2d 7 (8th Dist.1993).

{¶40} In this case, there were two cognizable events. On November 23, 2010, the Bankruptcy Court denied a motion to amend a Relief from Stay Order where Seniah requested an opportunity to file a plan of reorganization that would allow Seniah to protect the property subject to the foreclosure action. On August 15, 2011, the property subject to foreclosure was sold at Sheriff's Sale for allegedly a fraction of its lowest appraised value.

{¶41} The foreclosure action concluded on September 16, 2011. The bankruptcy case closed on November 22, 2011. Seniah states the attorney-client relationship between Keating and Seniah ended no later than November 22, 2011.

{¶42} Seniah claims in its appellate brief that its legal malpractice claim did not accrue until November 22, 2011, when the attorney-client relationship terminated. If its claim for legal malpractice accrued on November 22, 2011, Seniah's complaint should have been filed by November 22, 2012. Seniah's complaint was filed on February 19, 2013. Under either the termination of the attorney-client relationship or discovery of the cognizable events, Seniah's complaint against Keating was filed outside the one-year statute of limitations. Seniah's claim for legal malpractice against Keating can only survive if the Tolling Agreement extending the statute of limitations applies to Keating.

**Tolling Agreement**

{¶43} There is no dispute the Tolling Agreement is a contract. When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. *SPG, Inc. v. First St. Dev., L.L.C.*, 2016-Ohio-2824, 64 N.E.3d 340, ¶ 37 (5th Dist.) citing *Gen. Elec. Capital Corp. v. Tartan Fields Golf Club, Ltd.,* 5th Dist., 2013-Ohio-4875, 1 N.E.3d 463, ¶ 19 citing *Westfield Ins. Group v. Affinia Dev., L.L.C.,* 2012-Ohio-5348, 982 N.E.2d 132, ¶ 21 (5th Dist.). We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Sunoco, Inc. (R & M) v. Toledo Edison, Co.,* 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37 citing *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

{¶44} However, where the contract language is reasonably susceptible of more than one interpretation, the meaning of the ambiguous language is a question of fact. *Ohio Historical Soc. v. Gen. Maint. & Eng. Co.,* 65 Ohio App.3d 139, 146, 583 N.E.2d 340 (10th Dist.1989). "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Shifrin v. Forest City Ent., Inc.,* 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992), syllabus.

{¶45} In *Taft, Stettinius, & Hollister, LLP v. Calabrese*, 2016-Ohio-4713, 69 N.E.3d 72 (1st Dist.), the First District reviewed a tolling agreement entered into between a former client and a law firm. The former client brought an action for legal malpractice against an attorney working for the law firm. The tolling agreement named the former client and law firm, but did not name the attorney. The First District held the clear terms of the tolling agreement did not toll the statute of limitations against the attorney because he was not named in the agreement and did not sign the agreement. *Id.* at ¶ 24.

{¶46} The plain language of the Tolling Agreement at issue herein states there was an agreement between "Buckingham, Doolittle & Burroughs, LLP ("BDB"), an Ohio limited liability partnership, and William K. Haines, Jr. ("Haines") and Seniah Corp. ("Corporation")." Keating was not named in the agreement and he did not sign the agreement. If this Court applies *Taft* to these facts, there is no genuine issue of material fact that the plain language of the Tolling Agreement does not toll the statute of limitations against Keating.

{¶47} Seniah responds that while Keating is not named in the Tolling Agreement and did not sign the Tolling Agreement, the plain language of the Tolling Agreement still binds Keating. The Tolling Agreement states, "This Agreement is binding upon and inures to the benefit of each party, as well as their heirs, successors, assigns, shareholders, members, officers, directors, agents, or insurers, as these terms are applicable." Keating is a shareholder of Buckingham. Seniah states that as a shareholder, Keating is bound by the plain terms of the Tolling Agreement.

{¶48} The purpose of the Tolling Agreement is to invalidate the legal defense of statute of limitations if Seniah filed a lawsuit after the expiration of the statute of limitations. The Tolling Agreement was necessary to prevent Buckingham, or anyone acting on Buckingham's behalf, from seeking to defend against Seniah's claims on the basis of the statute of limitations. The Tolling Agreement states, "This Agreement *is binding upon and inures to the benefit of each party*, * * *." (Emphasis added). The parties to the Tolling Agreement are, "Buckingham, Doolittle & Burroughs, LLP ("BDB"), an Ohio limited liability partnership, and William K. Haines, Jr. ("Haines") and Seniah Corp. ("Corporation") * * *." In her deposition, Rodgers testified she signed the Tolling Agreement on behalf of Buckingham. (Depo. 37). The term of the agreement, "heirs, successors, assigns, shareholders, members, officers, directors, agents, or insurers", therefore refers to anyone acting on behalf of one of the parties and precludes anyone from acting on the parties' behalf from seeking to avoid the legal effect of the Tolling Agreement. Seniah named Buckingham and Keating as defendants in its lawsuit for legal malpractice. Seniah sued Keating in his individual capacity. There are currently no pending claims against Buckingham; Keating is the remaining defendant. Keating is not seeking to defend against Seniah's claims as a shareholder on behalf of Buckingham. He is seeking to defend Seniah's claims against him in his individual capacity. Therefore, Keating does not fall within the group of "heirs, successors, assigns, shareholders, members, officers, directors, agents, or insurers" intended to be bound by the Tolling Agreement. *See e.g. Resolution Trust Corp. v. Bonner*, 848 F.Supp. 96 (1994).

{¶49} Seniah next argues this Court should look beyond the plain language of the Tolling Agreement and consider the circumstances upon which it entered into the Tolling Agreement with Buckingham. Seniah claims Keating was bound by the Tolling Agreement under either the legal theories of agency, ratification, and/or equitable estoppel.

**Agency**

{¶50} Seniah claims Rodgers had the authority to bind Keating to the Tolling Agreement based on an agency relationship. Seniah states the agency relationship was created by either express, implied, or apparent authority. "The relationship of principal and agent, and the resultant liability of the principal for the acts of the agent, may be created by the express grant of authority by the principal. Absent express agency, the relation may be one of implied or apparent agency." *Master Consolidated Corp. v. BancOhio Natl. Bank,* 61 Ohio St.3d 570, 574, 575 N.E.2d 817 (1991).

{¶51} "Express authority is that authority which is directly granted to or conferred upon the agent or employee in express terms by the principal, and it extends only to such powers as the principal gives the agent in direct terms; and the express provisions are controlling where the agency is expressly conferred * * *." *Id.* "An agent's implied authority may also arise from the principal's express delegation of actual authority. Unless its extent is expressly limited by the principal, implied authority is that authority which is incidental and necessary for the agent to carry into effect the powers expressly conferred upon him by the principal." *Kaplan Trucking Co. v. Grizzly Falls Inc.*, 2017-Ohio-926, 86 N.E.3d 845, ¶ 32 (8th Dist.) quoting *Damon's Missouri, Inc. v. Davis*, 63 Ohio St.3d 605, 608, 590 N.E.2d 254 (1992). An agent acting within the scope of his

actual authority, expressly or impliedly conferred, has the power to bind the principal. *Id.* citing *Saunders v. Allstate Ins. Co.*, 168 Ohio St. 55, 58–59, 151 N.E.2d 1 (1958).

{¶52} Seniah claims Rodgers had express and/or implied authority to act as Keating's agent and bind him to the terms of the Tolling Agreement. On July 24, 2012, Seniah contacted Keating by letter to advise him of Seniah's potential claim for legal malpractice. Keating gave the letter to Rodgers. Rodgers responded to the letter, stating she represented Buckingham. Seniah states Rodgers's act of responding to Seniah's letter sent to Keating demonstrates Keating gave Rodgers express authority to act on his behalf. Keating did not independently respond to Seniah's letter. Rodgers further demonstrated she represented Keating's interests by attending meetings and mediation with Seniah. Seniah states Rodgers therefore had express authority to execute the Tolling Agreement on behalf of Keating.

{¶53} Keating testified in his deposition that he did not give Rodgers express authority to act upon his behalf. Keating agreed he did not individually respond to Seniah's letter, but he did not ask Rodgers to respond to the letter. (Depo. 13, 16). Keating gave the letter to Rodgers because Seniah asked for its case file, which was the property of Buckingham. Rodgers's letter to Seniah stated she was general counsel for Buckingham and she wished to discuss the "firm's position" with Seniah. Keating attended a meeting with Seniah and Rodgers to discuss Seniah's alleged claims. (Depo. 34). Keating states at the meeting he was representing himself. (Depo. 19). Keating testified that Seniah never asked if he was represented by counsel. (Depo. 19). Keating denied having anything to do with the drafting or execution of the Tolling Agreement. (Depo. 28). He did not sign the Tolling Agreement or approve the Tolling

Agreement. After Seniah filed its lawsuit and sued Keating in his individual capacity, Keating retained counsel. (Depo. 37).

{¶54} Based on the Civ.R. 56 evidence, we find that reasonable minds can only conclude there was no express or implied agency relationship between Keating and Buckingham as to the Tolling Agreement. Seniah had a potential claim for legal malpractice against Keating individually. Seniah never asked if Keating was represented by Rodgers. Keating and Rodgers never stated to Seniah that Rodgers represented Keating. In Rodgers's response, she stated she was contacting Seniah to discuss the law firm's position. Seniah cannot rely upon the October 15, 2012 meeting with Rodgers or the January 11, 2013 private mediation with Rodgers to support its claim for express authority because those events occurred after the execution of the Tolling Agreement on October 3, 2012.

{¶55} If express or implied agency does not exist, Seniah next argues that Rodgers had apparent authority to bind Keating to the Tolling Agreement. Apparent agency exists "where one who is assuming to act as an agent for a party in the making of a contract but in fact has no actual authority to do so, such party will nonetheless be bound by the contract 'if such party has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract.' " *Scott v. Kindred Transitional Care & Rehab.,* 8th Dist. Cuyahoga No. 103256*,* 2016–Ohio–495, ¶ 13 quoting *Master Consolidated,* 61 Ohio St.3d at 576, 575 N.E.2d 817 quoting *Miller v. Wick Bldg. Co.,* 154 Ohio St. 93, 93 N.E.2d 467 (1950).

{¶56} In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. *Master Consolidated Corp.,* 61 Ohio St.3d at syllabus. The burden of proving that apparent authority exists rests upon the party asserting the agency. *Scott* at ¶ 15 citing *Irving Leasing Corp. v. M & H Tire Co.,* 16 Ohio App.3d 191, 475 N.E.2d 127 (2nd Dist.1984).

{¶57} It is the acts of the principal, not the acts of the agent, that create apparent authority. *Master Consolidated,* 61 Ohio St.3d at syllabus. "The principal is responsible for the agent's acts only when the principal has clothed the agent with apparent authority and not when the agent's own conduct has created the apparent authority." *Primmer,* 2015–Ohio–4104, ¶ 26, 43 N.E.3d 788 quoting *Ohio State Bar Assn. v. Martin,* 118 Ohio St.3d 119, 2008–Ohio–1809, 886 N.E.2d 827, ¶ 41.

{¶58} The first prong of the analysis requires Seniah to establish that Keating, the principal, held Rodgers, the alleged agent, out to the public as possessing sufficient authority to bind Keating to the Tolling Agreement. Keating testified he did not have anything to do with the Tolling Agreement. (Depo. 28). Keating did not sign or approve the Tolling Agreement. There was no testimony that Keating spoke to Seniah about the Tolling Agreement. There is no testimony that Keating was present when Rodgers or Seniah signed the Tolling Agreement.

{¶59} The second prong of the apparent authority analysis requires Seniah to prove that it, acting in good faith, had reason to believe that Rodgers possessed the authority to bind Keating to the terms of the Tolling Agreement. Seniah relies on the events that occurred prior to the drafting of the Tolling Agreement to demonstrate that it had a good faith reason to believe that Rodgers possessed the authority to bind Keating to the terms of the Tolling Agreement. It states that because Rodgers responded to the letter regarding a possible claim for legal malpractice that it sent to Keating, Seniah believed Rodgers possessed the authority to bind Keating to the Tolling Agreement. Seniah claims its belief that Rodgers had authority to bind Keating to the Tolling Agreement was further reinforced because Rodgers appeared at a meeting to discuss Seniah's potential claims. Keating also appeared at the meeting. A second meeting and a mediation occurred after the execution of the Tolling Agreement, but these events cannot be used to support Seniah's claim it believed Rodgers had the authority to bind Keating to the Tolling Agreement because the events occurred after its execution.

{¶60} Reviewing these facts in a light most favorable to Seniah, we cannot find Seniah met its burden to establish these two events were a basis for a good faith belief that Rodgers had the authority to bind Keating to the Tolling Agreement. We do not find Rodgers's letter that stated she wished to discuss Buckingham's position and her attendance at a meeting where Keating also appeared cloaked Rodgers with apparent authority to bind Keating to the Tolling Agreement. Seniah failed to meet its burden to demonstrate a genuine issue of material fact that Rodgers had apparent authority to bind Keating to the Tolling Agreement.

**Ratification**

{¶61} Seniah claims if Rodgers lacked apparent authority to enter into the Tolling Agreement on behalf of Keating, Keating ratified the Tolling Agreement. The Ohio Supreme Court in *State v. Warner*, 55 Ohio St.3d 31, 65, 564 N.E.2d 18, (1990) stated:

A well-settled doctrine of the law of agency is that a principal may ratify the acts of its agent performed beyond the agent's scope of authority, and such ratification relates back to the time of performance of the acts and binds the principal from that time. *State, ex rel. Riley Constr. Co., v. East Liverpool Bd. of Edn.* (1967), 10 Ohio St.2d 25, 29, 39 O.O.2d 15, 18, 225 N.E.2d 246, 249. In *Campbell v. Hospitality Motor Inns, Inc.* (1986), 24 Ohio St.3d 54, 24 OBR 135, 493 N.E.2d 239, we concluded that a corporation could be bound to a contract that was neither expressly authorized nor expressly ratified by its board of directors, thus reaffirming the established rule that "an unauthorized contract entered into by a corporate officer or agent may be impliedly ratified by the corporate board of directors where the directors have actual knowledge of the facts and (1) accept and retain the benefits of the contract, (2) acquiesce in it, or (3) fail to repudiate the contract within a reasonable period of time." *Id.* at 57, 24 OBR at 138, 493 N.E.2d at 242.

{¶62} Seniah contends Keating knew of the Tolling Agreement. He accepted and benefitted from the Tolling Agreement by not being sued. Seniah also contends he failed to repudiate the Tolling Agreement.

{¶63} Reasonable minds could only conclude the theory of ratification is not applicable to the facts of this case. We found above there was no agency relationship between Keating and Rodgers. Keating did not benefit from the Tolling Agreement by not being sued because he was ultimately sued by Seniah in his individual capacity. In his answer to the complaint, Keating raised as a defense the statute of limitations, thereby repudiating any alleged benefit the Tolling Agreement may have given Keating.

### Equitable Estoppel

{¶64} Seniah finally claims if the Tolling Agreement is not applicable to Keating, the statute of limitations should be tolled under the doctrine of equitable estoppel.

{¶65} Equitable estoppel requires a party prove another party made a factual misrepresentation, that is misleading, that induced actual reliance which is reasonable and in good faith; and the misrepresentation caused detriment to the relying party. *Alford v. E. Ohio Gas Co.*, 5th Dist. Tuscarawas No. 2013AP030014, 2014-Ohio-2134, ¶ 255 citing *Doe v. Blue Cross/Blue Shield of Ohio*, 79 Ohio App.3d 369, 607 N.E.2d 492 (10th Dist.1992). The Ohio Supreme Court discussed the application of the doctrine of equitable estoppel to toll the statute of limitations:

> "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice. It is available only in defense of a legal or equitable right or claim made in good faith and should not be used to uphold crime, fraud, or injustice." *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630.

> Our sister court in New York recently considered whether equitable estoppel applied to toll the statutes of limitations for plaintiffs' claims in an

analogous case. The court held, "A defendant/wrongdoer cannot take affirmative steps to prevent a plaintiff from bringing a claim and then assert the statute of limitations as a defense. However, if the doctrine of equitable estoppel were to be applied as broadly as plaintiffs suggest, the statute of limitations would rarely be available as a defense. Plaintiff's proposed rule would revive any lapsed claim where the defendant inflicted some type of injury upon a knowing plaintiff but failed to come forward with further information about his or her wrongdoing.

"It is therefore fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit * * *." *Zumpano v. Quinn* (2006), 6 N.Y.3d 666, 674, 816 N.Y.S.2d 703, 849 N.E.2d 926. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶¶ 43-45 (2006).

{¶66} It is Seniah's burden to establish that Keating engaged in specific actions that kept it from timely bringing suit. The Civ.R. 56 evidence in this case shows that Seniah agreed to enter into a Tolling Agreement with Buckingham. Keating was not a party to the Tolling Agreement. There is no evidence that Keating made a factual misrepresentation to Seniah to change its position as whether to sue Keating for legal malpractice. The terms of the Tolling Agreement allowed Seniah to terminate the Tolling Agreement with 30 days advance notice. Even if the Tolling Agreement applied to Keating, Seniah could have brought suit against Keating at any time before the expiration of the statute of limitations.

**CONCLUSION**

{¶67} Upon our de novo review, we find reasonable minds could only conclude that under the plain language of the Tolling Agreement and/or under the theories of agency, ratification, and equitable estoppel, the Tolling Agreement did not apply to Keating. The trial court therefore properly entered summary judgment in favor of Keating.

{¶68} Seniah's sole Assignment of Error is overruled.

{¶69} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Baldwin, J. and

E. Wise, J., concur.